TAYLOR AND MYERS *v.* J. R. CONNER.

1. PRINCIPAL AND AGENT: AGENCY HOW ESTABLISHED.—An agency may be established by express authority, either verbal or written, and as to third persons, may be implied from the conduct of the principal or the usual business and employment of the agent. The character of the agent, whether general or special, is to be determined by the manner in which his authority is evidenced and made known.

2. SAME : SAME : MAY BE SHOWN BY RATIFICATION.—An agency may be established by the principal adopting and confirming *ex post facto* acts done in his name by another, acting without authority.

3. SAME : CANNOT BE RATIFIED IN PART.—A principal must adopt or repudiate the act of his pretended agent altogether ; he cannot separate it and ratify that which is beneficial, and repudiate the remainder.

4. SAME : RATIFICATION MAY BE EXPRESS OR IMPLIED.—Ratification may be express or implied. Express by verbal or written adoption of the act ; implied, from the conduct of the principal, as by receiving the benefit of the act of the agent after full knowledge of all the facts.

5. SAME : DRAFT OF AGENT NOT PAYMENT OF DEBT AS TO PRINCIPAL.— If the vendor, on a sale made to an agent, takes the promissory note of the agent for the amount of the purchase, on failure of the agent to pay, the principal will be liable upon the original consideration, as if the note had never been given. 5 Johns. 68 ; 7 id. 311 ; 1 Paige, 13 ; 11 Mass. 27.

6. SAME : PAYMENT: DRAFT OF AGENT ON PRINCIPAL, NOT ACCEPTED.— The draft of the agent, addressed to the principal, and given for the amount of a purchase made by the agent, in the name of the principal, is not a payment as to the principal unless accepted by him, or unless it was agreed to be received in payment.

7. PAYMENT : PROMISSORY NOTE OF THIRD PERSON.—The promissory note of a third person, transferred by a debtor to his creditor, is not deemed a payment unless accepted as such by the creditor.

ERROR to the Circuit Court of Harrison county. Hon. Wm. M. Hancock, judge.

Taylor and Myers brought their action to recover the price of a quantity of lumber sold to one McCaughn, as the agent of J. R. Conner.   The suit was commenced by attachment, which was levied on a schooner, the property of the defendant, who replevied the property and pleaded "non assumpsit" to the declaration.   With the plea of non assumpsit was filed a notice of certain special matters that would be introduced as evidence on the trial.

George McCaughn testified: That the account sued was correct; that he purchased the lumber for Conner, who gave him verbal authority to do so; that the lumber was shipped to New Orleans and delivered to Conner; that witness gave Taylor & Myers his sight draft upon Conner for the amount of the bill; that he did not pay for said lumber, and that it had not been paid for by any one else.

Taylor testified: That the account was correct; the lumber was sold to George McCaughn, who said he was acting as agent for the defendant; that he had sold two cargoes of lumber to McCaughn, as agent of defendant, who paid him for the same; that McCaughn, as agent, gave a sight draft on Conner, which had not been accepted or paid, and had not been protested.

Conner testified: That he was disposed to assist McCaughn and enable him to retrieve the disasters resulting from the late war; that he was not his agent, never authorized him to buy this lumber; that when it arrived in New Orleans he would not receive it, and told McCaughn so, who turned it over to Mason & Co., who sold it and paid the money to witness; that he gave a check to McCaughn for the amount, which McCaughn collected, and that witness had the check in his possession; that the draft of McCaughn was presented to him and he refused to accept it; that the draft was in the possession of J. R. Elliott, and remained a month or two after its presentation.

Taylor testified: Tha the saw Conner in New Orleans, who told him he had received the lumber, and said nothing about its being turned over to Mason & Co.

The instructions to the jury will be found in the opinion of the court.

The jury found a verdict for the defendant Conner.

*W. P. Harris* and *T. J. Humphries* for plaintiffs in error.

No counsel for defendant in error.

SHACKELFORD, C. J., delivered the opinion of the court.

An attachment was sued out by the plaintiffs in error to the Harrison Circuit Court upon the following account:

"J. R. Conner,
    1866.                                    To Taylor & Myers, Dr.
Jan. 29.          For 13,848 ft. W. B. @ $30          $415 44
            "   2,928 ft. flooring and scant'g.          81 97
                                                 ————
                                           $497 41."

Declaration, and plea of general issue—verdict and judgment for defendant in error.

The case is brought into this court, by writ of error for revisal.

The first assignment of error is, " that the court refused instructions asked by the plaintiffs which were plainly required by the law and the evidence."

The plaintiffs in error asked the court to give to the jury the following instruction, to wit: " That if they believe from the evidence, that George McCaughn was the agent of the defendant, and, as such agent, bought the lumber charged in plaintiff's account, and freighted it to New Orleans, and that defendant received it, or the proceeds of it, and has not paid the plaintiff for it, then they should find for the plaintiffs, and assess their damages at the amount the said agent agreed to pay for it."

This instruction was refused by the court; to which ruling the plaintiffs in error excepted, which exception was allowed.

The agency of George McCaughn was denied by the defend-

ant in error. There was no writing showing the agency before the jury.

McCaughn testified that he was the captain or master of the schooner Norma, in which the lumber in controversy was shipped to New Orleans.. That Conner was the owner of the schooner Norma.

A party dealing with another, who represents himself as an agent, does it at his peril. It is well settled that between the principal and third parties, the true criterion by which the character of the agent, as general, or special, will be determined, is that by which the agency is evidenced, and made known to them—whether it be by a written instrument, or the conduct of the principal, or the agent's usual business, or employment—though if evidenced to them only, by that conduct, or business, or employment.

There is another way of establishing the relation of agency besides those above considered, viz.: By adopting and confirming *ex post facto* the acts done in one's name by another acting without authority, whether they are done under color of an established agency, or by a stranger. And here the general rule is, that when one without authority acts in the name of another, that other may, at his option, either adopt or repudiate such act. 13 East. 274; 2 M. & S. 485; 1 Bingham N. C. R. 198.

There was evidence before the jury, that George McCaughn was authorized verbally by the defendant Conner to purchase the cargo of lumber, the consideration of the account sued on; that the cargo of lumber was delivered by McCaughn to the defendant in error, in New Orleans, where he resided, and that the defendant in error there received the lumber, and that he received the money from the sale of the same. That McCaughn stated to plaintiff in error that he was authorized by Conner to purchase the lumber from plaintiffs in error when he purchased the same; that Conner received the benefit of the freight, by the purchase, &c.

It is well settled that a party charged as principal shall *adopt* or *repudiate* the act of the pretended agent *altogether;* he cannot separate it, as by ratifying what is beneficial to himself only,

and repudiating the remainder.    2 Strang, 859 ; 7 B. & C. 310 ; Smith M. L. 113, ; 3 B. & Adol. 580.    Such recognition or adoption may be either express or implied.    Express, as by words, spoken or in writing : implied, as from the conduct of the principal or party charged as such—for instance, as by receiving the benefit of the act, and holding it after knowledge of the facts.  8 How. (U. S.) 134; id. 162 ; 2 M. & M. 217.

There was evidence before the jury in the case, showing that a draft had been drawn by the witness McCaughn, as the agent of the defendant in error, upon the defendant Conner at sight, for the amount of the bill of lumber aforesaid, and that the bill was presented to Conner before the sale of the lumber in New Orleans ; that he refused to accept the same, or to pay the same ; he knew where the bill of exchange was after his refusal to pay the same ; that the bill remained in the possession of J. R. Elliott, the agent of plaintiffs in error, two months after the same was drawn, and that the agent Elliott resided in New Orleans where defendant resided ; and in the mean time defendant in error received by his own admission the money for the sale of the lumber in question.

If these facts as stated were true, this was sufficient evidence, in the absence of any other, to show that the act of the agent was by the principal himself regarded as his own, and that the act being thus regarded as the act of the principal, the principal became chargeable with its legal consequences—not because he has received the benefit of the act, but because in law it is his act, for the rule is : " If it be shown by any other evidence that the act is his act, he will be equally responsible whether the act result in a benefit or loss to him."

" It has been indeed held that a ratification is equivalent to an original or previous express authority."   1 Watts & S. 106.

It was also in proof (by two witnesses) that McCaughn had purchased two cargoes of lumber from the plaintiffs in error, representing himself as the agent of Conner, to freight his vessel, the Norma, previous to the purchase of the lumber in controversy ; and that the defendant Conner paid for the lumber, recognizing the purchases as the act of his agent, McCaughn.

The defendant in error did not repudiate the act of McCaughn

Taylor and Myers *v.* J. R. Conner.

by notifying the plaintiffs in error that McCaughn was not his agent, after he was in possession of all the facts, but received the money for the sale of the cargo of lumber, knowing that it *had not* been purchased by McCaughn for himself, but as agent for defendant in error.

Taylor, one of the plaintiffs in error, proved that Conner admitted to him that he had received the lumber on its arrival in New Orleans. McCaughn proved he delivered it; this was denied by defendant in error. If this was true, as stated by these witnesses for the plaintiffs in error, the defendant in error, by this act, assumed an authority which he had not, unless he did it as principal, thereby recognizing the agency of McCaughn.

The testimony was conflicting as to many material facts; and it was for the jury to weigh and pass upon it, under a proper instruction from the court, and not for the court to dispose of it in the manner it was done.

It is manifest that the instruction under consideration contains no proposition in violation of these well-established views of the law of agency. It was relevant, and material to the facts in proof before the jury, and should have been given. The refusal of the court to give it was error.

The second assignment of error is, that " the court below gave instructions for the defendant which were plainly contrary to law, and which misled the jury to a wrong verdict."

The instructions objected to are, these words : " 1. If the jury believe from the evidence that the plaintiffs took McCaughn's sight draft upon the defendant for the amount sued on, then they *must* find for the defendant." · " 2. That if they believe from the evidence that the plaintiffs took George McCaughn's draft (the captain of the schooner Norma) upon Conner, for the amount sued on, then the account was merged, or discharged, and the plaintiffs must look to the draft, the higher security, and failing to do so they *must* find for the defendant."

This assignment is well taken. The 1st instruction was intended to create upon the minds of the jury the impression that the plaintiffs in error received the draft *as a payment* for the lumber, and did not look to Conner for the money.

There was no evidence to warrant any such inference : if it was not so intended, we are unable to conjecture what rule of law the court was influenced by in the giving of the same.    The evidence before the jury relative to the draft was, that McCaughn as agent drew a draft, *as such agent,* for the amount of the bill of lumber, upon his principal, Conner.

There was no evidence before the jury that the plaintiffs in error received it as a payment or satisfaction of the debt, or that plaintiffs in error ever relied upon McCaughn for the payment of the draft or account.    The evidence was that the plaintiffs in error looked to the defendant in error for the payment of the draft and account, and to no other person.

The 2d instruction given for the defendant in error is in conflict with well settled law.

It assumes that the account sued on is merged or discharged by the sight draft of the agent, drawn, as agent, on his principal, Conner.    The rule is well settled, that " if the vendor on a sale made to an agent, take the promissory note of the agent, for the amount of the purchase, on failure of the payment by the agent, the principal will be equally liable upon the original consideration, just as if the note had not been given by the purchaser himself.    *For a mere promise to pay is no payment.*    5 Johns. Rep. 68 ; 7 ib. 311 ; 1 Paige, 13 ; 11 Mass. 27.    Therefore, the written promise of the debtor to pay does not confine the creditor to his remedy under the written instrument, neither is the promissory note of a third person to be deemed a payment, unless accepted as such at the time of the sale.    15 Mass. 75–79. *A fortiori,* the note of the agent can have no higher efficacy to discharge the principal, than if made by himself."    Dunlap's Paley on Agency, 251.

The giving of the draft by McCaughn, which in this case was a mere order to pay the plaintiffs in error the amount of his purchase, for his principal, drawn on the principal, does not discharge the defendant in error, Conner.

Why the learned judge should consider the mere draft, or order upon Conner, a higher security, and the account " merged or discharged" thereby so far as Conner is concerned, is not perceived.

The instructions given for the defendant in error should have been refused by the court, and the second instruction asked by the plaintiffs in error, and refused by the judge, should have been given.

The 2d instruction asked, and refused, embodies the law applicable to the facts of this branch of the case ; which is in these words : "That if the jury believe from the evidence that McCaughn was, and acted as the agent of defendant, and as such agent did draw a draft on defendant, and that said draft was not accepted or paid by defendant, then the giving such draft did not merge the account ; but the plaintiffs can resort to their action upon the original consideration."

For these reasons we think the verdict should be set aside, judgment reversed, and a *venire de novo* awarded.