## ALONZO THACHER vs. EVANDER PRAY.

One without authority sold the plaintiff's chattel to the defendant, receiving in payment a bank check, which he indorsed and gave the plaintiff in payment of a debt he owed him. The plaintiff in ignorance of the sale collected the check, and applied the proceeds to the payment of that debt. In an action to recover the value of the chattel, *Held*, that the plaintiff's receipt and collection of the check were not a ratification of the sale; and that he had a right to appropriate the check to the extinguishment of the debt in payment of which it was given him.

ACTION in which counts in contract were joined with a count in tort. The declaration was as follows: "And the plaintiff says the defendant has converted to his own use a horse, the property of the plaintiff.

"And the plaintiff says the defendant owes him two hundred and fifty dollars, for a horse sold and delivered by the plaintiff to the defendant.

"And the plaintiff says he owned a certain horse of the value of two hundred and fifty dollars, which was left for keeping with one Gray in Providence, Rhode Island; and said Gray, assuming to act with authority to sell said horse, sold and delivered said horse to the defendant for said sum of two hundred and fifty dollars, and allowed the defendant in payment therefor to give the said Gray credit for said sum upon a private account then existing between said Gray and the defendant, and said mode of payment was wholly without any authority, express or implied, from the plaintiff, and contrary to his instructions to said Gray; and the defendant owes the plaintiff the sum of two hundred and fifty dollars for said horse.

"All the above counts are for the same cause of action, and are joined because it is doubtful to which class this action belongs."

The answer was as follows: "And now comes the defendant, and for answer denies each and every allegation in both counts of the plaintiff's writ and declaration. And the defendant, further answering, says he purchased the horse mentioned in the plaintiff's declaration of said Thomas Gray, who was the agent of the plaintiff, or who assumed to act as the plaintiff's agent in making said sale; that in part payment for said horse, the defendant gave said Gray the sum of one hundred dollars, and said Gray immediately after paid said sum to the plaintiff, of all which the plaintiff was fully informed before bringing this suit, yet retained and still retains said sum of one hundred dollars. And the defendant further says that he paid the plaintiff in full for said horse before this action was brought."

At the trial in the Superior Court, before *Pitman,* J., the plaintiff, who lived in Vermont, introduced evidence tending to show

that in the fall of 1871, he took some horses to Providence, Rhode Island, to sell, and having sold all but one, he left that one with Gray to keep for him through the winter; that he gave Gray no authority to sell it; that he returned home about the last of November; that about the last of March, 1872, he was informed by Gray that it had been sold; that early in April he came from Vermont and found it in the defendant's possession; that he made a demand for it upon the defendant, and denied Gray's right or authority to sell it.

The defendant introduced evidence tending to show that on January 18, 1872, he went to Providence to try to collect a debt of Gray; that he took with him an officer with a writ, for the purpose of attaching any property of Gray that he might find; that he found this horse in Gray's stable, and bought it of him; that Gray told him the horse was not his, but that he was authorized to sell it; that he paid Gray for it by giving him a cashier's check for $100, drawn by the cashier of the Bristol County National Bank upon the Bank of Mutual Redemption in Boston, payable to the order of Gray, and a receipt in full for his claim, which with costs then amounted to about $105; that Gray indorsed the check, and sent it to the plaintiff, who received and collected it. It was agreed that when the plaintiff called on the defendant in April, he was then informed by both Gray and the defendant of the entire transaction between them, and that the check which had been sent to him had been received by Gray in part payment for the horse. When the plaintiff demanded the horse of the defendant, the defendant requested him to return the check or its proceeds. This the plaintiff refused to do, and the defendant declined to give up the horse. A few weeks after the plaintiff again called on the defendant, and again demanded the horse, but refused to restore the check or its proceeds, though requested to do so by the defendant, and the defendant declined to give up the horse.

The plaintiff testified that he received the check by mail from said Gray on or about January 20, in a letter; that he then had an account against Gray for potatoes that he had sold him; that he applied the proceeds of the check to that account, and

that he had no information of the sale of the horse until about six weeks afterwards. The letter inclosing the check was as follows: " Providence, January 22, 1872. Mr. Thacher. Sir: Your letter is received. I should have answered it before, but I was in hopes that I could sell all of the potatoes and get the pay for them, but I have not sold all of them yet; they are in bad shape. Potatoes are a drug in the market. You had better not fetch any more at present. I am sorry I cannot send you all the money now, but I think I can soon, as I can collect some in. Yours truly, Thos. Gray. I send you a check for one hundred dollars. Please credit me for the same."

The plaintiff asked the court to rule as follows: " If Gray sent the check to Thacher to be applied on the account for potatoes, and Thacher so received it and applied it before he knew of the sale of the horse, the mere fact that the check so sent was the same check which Pray gave Gray for the horse, is of no consequence; and his receipt and application of said check under the above circumstances would constitute no ratification of the sale of the horse, nor would he, after becoming informed of the transaction between Pray and Gray, be obliged to refund the amount of said check before bringing this suit."

The court declined to give these instructions, but instructed the jury as follows: " If the defendant gave to Gray a check for one hundred dollars in part payment of said horse, and Gray sent the same to the plaintiff, and he received the proceeds thereof, and was fully informed of the whole transaction before commencing this suit, and was then requested by the defendant to return the said sum of one hundred dollars, and refused so to do, then this action cannot be maintained. If said Gray was the duly constituted agent of the plaintiff, or assumed to act as his agent, for the purpose of making said sale, and received of the defendant, in part payment of said horse, a bank check for the sum of one hundred dollars, which he sent to the plaintiff, who received the proceeds thereof, and was afterwards fully informed of the whole transaction by said Gray or the defendant or by either of them, and still retained, and refused upon request to restore, the said sum of one hundred dollars to the defendant, he has thereby

ratified and adopted the entire transaction as made by said Gray, and is bound by it, and can recover nothing of the defendant."

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*W. H. Fox*, for the plaintiff.

*H. J. Fuller*, (*E. H. Bennett* with him,) for the defendant.

ENDICOTT, J.   The instructions upon which this case was given to the jury failed to notice an important portion of the evidence. If the only dealings between the plaintiff and Gray related to this horse, and the money paid for the horse by the defendant to Gray, who had no authority to sell, had been sent to the plaintiff, the taking and keeping it might be a ratification of the sale by Gray ; or if the plaintiff had wished to rescind it, he should return the money so received.   But the evidence in the case required other and further instructions.   It appeared that the plaintiff had sent potatoes to Gray for sale, and there was evidence tending to show that the check for $100, taken by Gray on account of the wrongful sale of the horse, was paid over to the plaintiff, received by him, and credited on account of the potatoes, and the plaintiff did not know the horse had been sold, for a long time afterward. These facts justify the plaintiff's prayer for instructions, and we think they should have been given.   It does not affect the rights of the parties that the same check which defendant gave Gray was given to the plaintiff, if it was applied to the settlement of an existing account between them, without any notice that it was a part of the proceeds of the unauthorized sale of the horse. Being indorsed by Gray it was in the plaintiff's hands payable to bearer, transferable by delivery, and subject to the same rules as bank bills, coupons, or other instruments payable in money to bearer.   *Spooner* v. *Holmes*, 102 Mass. 503.   It is as if Gray had cashed the check and sent the identical or other bills to the plaintiff.   It was held in *Lime Rock Bank* v. *Plimpton*, 17 Pick. 159, where an agent had lent the money of his principal to his private creditor, who appropriated it to the payment of the debt, that the principal could not recover it, the creditor not knowing at the time of the loan that the money belonged to the principal.   The creditor had the right to secure his private debt, and being money

having no ear mark, it did not stand on the same ground as chattels. A party is not bound to inquire into the authority of a person from whom he receives money in payment of a debt, for a different doctrine would be productive of great mischief. In that case as in this, there was no privity between the parties, and the equities were much stronger than here.

*Exceptions sustained.*