ADDISON B. JOHNSTON ET AL. V. MILWAUKEE & WYOMING
INVESTMENT COMPANY.

FILED SEPTEMBER 16, 1896.   No. 7367.

1. **Instructions**: ASSIGNMENTS OF ERROR. Errors in respect to giving
   instructions must be separately assigned in the motion for new
   trial. If assigned in group, and any one of the group against
   which the assignment is directed is without error, the assignment
   must be overruled. (*Spears v. Chicago, B. & Q. R. Co.*, 43 Neb.,
   720.)

2. **Trial**: SPECIAL FINDINGS. "When the special finding of facts is in-
   consistent with the general verdict, the former controls the latter,
   and the court may give judgment accordingly." (Code of Civil
   Procedure, sec. 294.)

3. ———: ———: REVIEW. Where there are several special findings of
   facts, and among them one which can but be and is a conclusion
   or an inference drawn from the others, and it is manifestly wrong,
   it will be disregarded.

4. **Principal and Agent**: RATIFICATION. The ratification by a prin-
   cipal of the unauthorized act of an agent may be either express or
   implied. (*Taylor v. Conner*, 41 Miss., 722.)

5. ———: ———. The acceptance or retention by the principal, after
   knowledge of the facts, of the fruits of an unauthorized act of an
   agent is a ratification of the agent's act, and it relates back to the
   time of the act and makes it as if the agent had been empowered
   to perform it at its date, and the principal is bound in all respects
   as if he himself had been the actor. (*Hughes v. Ins. Co. of North
   America*, 40 Neb., 627.)

6. ———: ———. If the principal desires to repudiate the unauthor-
   ized act of his agent, he must, as soon as he acquires knowledge
   of the facts, return, or tender a return, of any benefits by him re-
   ceived as the proceeds of such acts, or be held to have ratified
   them.

7. ———: ———: PLEADING: EVIDENCE. Proof of the ratification by the
   principal of the unauthorized acts of the agent was competent in
   an action of replevin under an answer of general denial. (*Merrill
   v. Wedgwood*, 25 Neb., 283.)

8. **Unauthorized Sale by Agent**: RETENTION OF PROCEEDS: RATIFICA-
   TION: REPLEVIN: PLEADING AND PROOF. In the case at bar plaint-
   iff commenced an action of replevin to recover of the defendants
   certain cattle, the possession of which had been acquired by de-
   fendants through an alleged unauthorized sale of the cattle to
   them by an agent of plaintiff. The defendants' answer was a gen-

eral denial. After the commencement of the action, but before trial, the plaintiff gained knowledge that it had received the benefit of a portion of the proceeds of the unauthorized sale. *Held,* That it should then have returned to the defendants so much of the proceeds of the sale as had been applied to its benefit, or tendered such return, and its failure to do so would be a ratification of the sale, which related back to its inception, and which could be proved on the trial by defendants under the general denial and without the filing on their part of a supplemental answer setting up such ratification.

9. **Assignments of Error: REVIEW.** The questions passed upon in the former opinion were, owing to the defective assignment of errors in the motion for a new trial, not properly before this court and need not now be re-examined.

REHEARING of case reported in 46 Neb., 480.

The facts and issues appear in the opinion and in the former reports of the case in 35 Neb., 554, and 46 Neb., 480.

*John L. Webster,* for plaintiffs in error:

Under the seventh, eighth, ninth, and tenth special findings of fact the plaintiff must be held to have ratified the sale of the cattle and judgment should have been entered for the defendants. (*Cook v. Tullis,* 18 Wall. [U. S.], 338; *Hughes v. Ins. Co. of North America,* 40 Neb., 627; *Starks v. Sikes,* 8 Gray [Mass.], 609; *Despatch Line v. Bellamy Mfg. Co.,* 12 N. H., 205; *Planters Bank of Mississippi v. Sharp,* 4 S. & M. [Miss.], 75; *McMahan v. McMahan,* 13 Pa. St., 376; *Charles v. State,* 11 Ark., 389; *United States Express Co. v. Rawson,* 106 Ind., 215; *Goss v. Stevens,* 32 Minn., 472; *Ruggles v. Washington County,* 3 Mo., 496; *Shoninger v. Peabody,* 57 Conn., 42; *Russ v. Telfener,* 57 Fed. Rep., 973; *Persons v. McKibben,* 5 Ind., 261.)

Failure to return or tender back the money applied by the agent Adams in payment of debts owing by the Milwaukee & Wyoming Investment Company was a ratification of the sale of the cattle. (*Perkins v. Boothby,* 71 Me., 91; *Mayor of Nashville v. Ray,* 19 Wall. [U. S.], 484; *Taylor v. Conner,* 41 Miss., 722; *First Nat. Bank of Las Vegas v.*

*Oberne,* 121 Ill., 25; *Baer v. Lichten,* 24 Ill. App., 311; *Thompson v. Peck,* 115 Ind., 512; *Moriarity v. Stofferan,* 89 Ill., 528; *Harding v. Parshall,* 56 Ill., 219; *Nichols v. Shaffer,* 63 Mich., 599; *First Nat. Bank of Trenton v. Badger Lumber Co.,* 54 Mo. App., 327.)

Even if the plaintiff should have offered at the trial to refund to defendants the amount of money, the use and benefit of which they have enjoyed, it would be too late to avoid the ratification. (*Southern Oil Works v. Jefferson,* 70 Tenn., 581.)

The defendants had the right to prove an act of ratification which occurred after the suit was brought. (*Gelatt v. Ridge,* 117 Mo., 555.)

It was not necessary for the defendant, by supplemental answer, to plead ratification. (*Towne v. Sparks,* 23 Neb., 142; *Merrill v. Wedgwood,* 25 Neb., 283; *Cool v. Roche,* 15 Neb., 25; *Blue Valley Bank v. Bane,* 20 Neb., 294; *Richardson v. Steele,* 9 Neb., 483; *Long v. Osborn,* 59 N. W. Rep. [Ia.], 14; *Eadie v. Ashbaugh,* 44 Ia., 520.)

*J. W. Sparks* and *George H. Noyes, contra:*

The statutes of Wyoming rendered the sale to defendants void. (*Holman v. Johnson,* 1 Cowp. [Eng.], 343; *Timp v. Dockham,* 32 Wis., 146; *Yates v. Fassett,* 5 Den. [N. Y.], 21; *Tucker v. Mowrey,* 12 Mich., 378; *Petrie v. Hannay,* 3 T. R. [Eng.], 422; *Sowles v. Welden Nat. Bank,* 61 Vt., 375; *Melchoir v. McCarty,* 31 Wis., 252; *Brazee v. Bryant,* 50 Mich., 136; *Winfield v. Dodge,* 45 Mich., 355; *Dodson v. Harris,* 10 Ala., 566; *Hauf v. Northwestern Masonic Aid Association,* 76 Wis., 450; *Poulton v. London & S. W. R. Co.,* L. R., 2 Q. B. [Eng.], 534; *Clark v. Metropolitan Bank,* 3 Duer [N. Y.], 241.)

References to questions relating to ratification: *Flagg v. Flagg,* 39 Neb., 229; *Pemigewasset Bank v. Brackett,* 4 N. H., 557; *Hornfager v. Hornfager,* 6 How. Pr. [N. Y.], 13; *Hope v. Brinckerhoff,* 4 Edw. Ch. [N. Y.], 687; *Hoyt v. Sheldon,* 4 Abb. Pr. [N. Y.], 59; *Ormsbee v. Brown,* 50 Barb.

[N. Y.], 436; *Farwell v. Myers*, 59 Mich., 179; *Smith v. Phelan*, 40 Neb., 765; *Kavanaugh v. Brodball*, 40 Neb., 875; *Marshall v. Bunker*, 40 Ia., 121; *Campbell v. Williams*, 39 Ia., 646; *Cassell v. Western Stage Co.*, 12 Ia., 47; *Kingsbury v. Buchanan*, 11 Ia., 387; *Cary v. Hewitt*, 26 Mich., 228; *Merrill v. Denton*, 73 Mich., 628; *Belden v. Laing*, 8 Mich., 500; *Clark v. West*, 23 Mich., 242; *Wilson v. Montague*, 57 Mich., 638; *Bartlett v. Goodwin*, 71 Me., 350; *Powell v. Henry*, 96 Ala., 412; *Wittenbrock v. Bellmer*, 57 Cal., 12; *Read v. Buffum*, 79 Cal., 77; *Singer v. Schilling*, 74 Wis., 369; *Lee v. Burnham*, 82 Wis., 209; *Thacher v. Pray*, 113 Mass., 291.

HARRISON, J.

This, an action of replevin, was commenced in the district court of Merrick county by the Milwaukee & Wyoming Investment Company, a corporation, to recover the possession of 250 head of cattle. It was claimed that the cattle had been delivered to, and were in the possession of, the defendants in the suit, pursuant to an unauthorized and attempted transfer to them made by a person at the time in charge of the stock ranch of plaintiff in Wyoming. A trial of the issues joined resulted in a verdict and judgment for the defendants. The judgment then rendered, in error proceedings to this court by the plaintiff, was reversed and the cause remanded to the district court, where, in a second trial of the litigated questions, the plaintiff was successful and was accorded a judgment. The case was again removed to this court, this time on behalf of the defendants, and, on hearing, the judgment was reversed and the case ordered remanded. A motion for rehearing was interposed for plaintiff and, on presentation, was sustained, since which action the case has been again submitted for consideration and decision of the questions raised by the petition in error.

In the opinion written when the cause was first submitted to this court a somewhat extended and detailed

statement of the facts was inserted (see *Milwaukee & Wyoming Investment Co. v. Johnston*, 35 Neb., 554), and it will be unnecessary to restate them here. The decision rendered as the result of the consideration of the questions presented on its second appearance here is reported in 46 Neb., 480, and entitled *Johnston v. Milwaukee & Wyoming Investment Co.* In the syllabus to the first opinion, *Milwaukee & Wyoming Investment Co. v. Johnston*, it was stated:

"1. Where a principal empowers an agent to transact business with respect to which there is a well defined and publicly known usage the presumption is, in the absence of facts indicating a different intent, that such authority was conferred in contemplation of such usage, and persons dealing with such agent in good faith will not be bound by limitations upon such usual authority.

"2. But such usage, to bind a principal, must have existed for such a time, and become so widely and generally known, as to warrant the presumption that he had it in view at the time of the appointment of the agent.

"3. The M. & W. I. Co., a Wisconsin corporation owning a cattle ranch in Wyoming, appointed one A. its agent in Wyoming, with limited power, viz., to hire and pay for the necessary help, and pay the current expenses with money remitted on his statement, and to care for and round up the cattle and ship them, when fit for market, to Chicago in care of a particular commission house. In an action of replevin by the company aforesaid against J. & R., to recover cattle claimed by the latter to have been purchased from A. on the ranch aforesaid, held, error to receive evidence on the part of the defendants to prove that, at the time they purchased the cattle from A., it was the custom or usage of managers of cattle companies doing business in Wyoming to sell the cattle from the ranches of such companies, in the absence of any evidence that the plaintiff company had knowledge of such usage."

And in the body of the opinion appears the following: "Adams was given no authority to ship cattle elsewhere,

nor was he authorized to sell or dispose of the cattle at any time or in any way or place. He had specific instructions from the officers of the plaintiff company not to sell any cattle from the ranch. These instructions were verbal, given him at the time of his employment and never modified thereafter. In addition to the above terms of hiring there was no official or corporate action appointing Adams as manager, and no record in the minutes of the company of his employment;" and further: "Since the judgment must be reversed, for reasons stated, it is not deemed necessary to consider the other questions presented."

The headnotes of the opinion in *Johnston v. Milwaukee & Wyoming Investment Co., supra*, were as follows:

"1. One dealing with the agent of a business corporation, in a matter relating to its business operations and not involving its corporate functions, is not charged with notice of its by-laws.

"2. Therefore, the apparent authority of such agent cannot be extended or restricted by such by-laws in the absence of actual notice thereof.

"3. Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped, as against such third person, from denying the agent's authority. Whether or not an act is within the scope of the agent's apparent authority is to be determined under the foregoing rule as a question of fact, from all the circumstances of the transaction and the business.

"4. Evidence of such apparent authority is not restricted to proof of general custom, or to proof that the agent had previously performed similar acts to the knowledge of the principal. The nature of the business usage not amounting to a general custom, and the fact,

if it exists, that the principal is at a great distance and the agent apparently entirely in charge of the business, may in proper cases be, among other things, elements for consideration."

The conclusions announced here were the results of a consideration of one portion of the trial court's charge to the jury and some special findings submitted to that body. The paragraph of the instructions which was examined was quoted in the body of the opinion. At the close of the opinion it was stated: "It follows that the special findings referred to were insufficient whereon to found the judgment, and that the instruction quoted was erroneous."

The motion for rehearing, to the extent we need notice it, was based upon the ground that the action of the trial court in giving any portion of the charge to the jury was not open to review, there being no sufficient assignment in the motion for a new trial of any alleged errors in the instructions. The motion for new trial, in the particular to which we have just alluded, was in terms as follows:

"5. The court erred in giving the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth paragraphs of the instructions given on its own motion."

Some of the instructions included in the foregoing assignment of error were correct. The assignment of error was insufficient and must be overruled. (*Spears v. Chicago, B. & Q. R. Co.*, 43 Neb., 720.) We will say that at the former hearing of the case, in the arguments, either oral or by brief, our attention was not specifically directed to the manner in which error had been assigned, in the motion for a new trial, in regard to the instructions to the jury, and in our subsequent considerations of the questions involved and in the preparation of an opinion this particular point escaped notice and hence was not accorded the weight and force to which it was entitled.

It was properly presented and urged to the judge of

the trial court that, under certain of the special findings of facts contained in the special verdict of the jury, the defendants were entitled to a judgment in their favor, since the special findings referred to established a ratification by the plaintiff of the sale of the cattle by Adams, the agent, to defendants. Such special findings were as follows:

"7. Did Thomas R. Adams, within the scope of his authority, pay out for the plaintiff's use in connection with the running of the Wyoming ranch any of the money received from the defendants for the cattle in question?

"A. Yes.

"8. If said Adams paid out any of said money for such purpose, how much did he so pay out?

"A. Amount shown by checks, which is five hundred twenty-eight and 80-100 dollars ($528.80).

"9. If said Adams made such payments, when did the plaintiff learn that fact?

"A. February 15, 1890.

"10. If Adams made such payment out of said money, has the plaintiff ever tendered such money back to the defendants?

"A. No."

The petition in the action was filed December 14, 1889. It will be noticed that the jury answer that it was of date February 15, 1890, that plaintiff first learned that Adams had paid, in the interest of and for plaintiff, a sum of money received from defendants in payment for the cattle in controversy, that its discovery of such fact was subsequent to the commencement of this action.

The petition of plaintiff was in the usual form of petitions in actions of replevin. The defendant's answer was a general denial. In the statement of facts set forth in the opinion in *Johnston v. Milwaukee & Wyoming Investment Co.*, *supra*, after noticing the payments for these cattle by defendants to Adams, by checks and their deposit in a bank at Cheyenne to the credit of Adams, it is further said: "This money was all checked out by Adams for

his own use." However this may have appeared in the record of the first trial in the district court, the jury, from the evidence adduced at the second trial, made the findings on this point which we have quoted herein, and they were sustained by the evidence. In section 292 of the Code of Civil Procedure it is stated in relation to special findings of facts or special verdicts, they must present the facts as established by the evidence, and in such manner that nothing remains to the court but to draw from them conclusions of law. Section 294 of the Code is as follows: "When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly." On the subject of ratification by a principal of the unauthorized acts of an agent (if it be conceded, for the sake of argument, that the act of Adams, the sale of the cattle, was unauthorized, which we do not now decide) this court thus expressed the rule: "The acceptance by a principal of the fruits of an unauthorized contract made by his agent is a ratification of such agent's conduct, and said ratification relates back to the date of the performance of the act ratified, and the principal is bound by the effects thereof, and the results flowing therefrom, as much so as if he had himself performed the act." (*Hughes v. Ins. Co. of North America*, 40 Neb., 627.) "The ratification * * * operates upon the act ratified precisely as though authority to do the act had been previously given." (*Cook v. Tullis*, 18 Wall. [U. S.], 338; *Russ v. Telfener*, 57 Fed. Rep., 973; Mechem, Agency, sec. 167.) "Ratification may be express or implied." (*Taylor v. Conner*, 41 Miss., 722.) The principal, after knowledge of the facts, must return, or tender a return, of the proceeds or benefits received by him by virtue of the unauthorized acts of the agent, or be held to have ratified the acts; and this applies to corporations, as principals, equally as to persons. (*Perkins v. Boothby*, 71 Me., 91; *Nichols v. Shaffer*, 63 Mich., 599; *First Nat. Bank of Trenton v. Badger Lumber Co.*, 54 Mo. App., 327; *Persons v. McKibben*, 5 Ind.,

261; *First Nat. Bank of Las Vegas v. Oberne*, 121 Ill., 25.) Proof of a ratification of the agent's acts by the principal, if matter of defense, was competent in an action of replevin under an answer of general denial. Under a general denial, in an action of replevin, a defendant may introduce "evidence of any special matter which amounts to a defense to the plaintiff's cause of action." (*Merrill v. Wedgwood*, 25 Neb., 283.)

But it is urged that in an action of replevin the rights of the parties are to be determined as of the time of the commencement of the suit, and that the finding of the jury is that the defendant did not obtain knowledge of its debts having been paid by Adams, the agent, with a portion of the proceeds of the sale of the cattle to defendants until after it had instituted the suit, and further, in this connection, that if competent, it could only have been made so by the filing of a supplemental pleading on the part of defendants. To this it must be said that when the plaintiff gained knowledge of its reception of the benefit of a portion of the proceeds of the sale of the cattle to defendants and did not return what it had received, or tender a return, it ratified the act of the agent, unauthorized though it may have been, and the ratification related back to the inception of the act, and it was as if the authority had been previously given, except rights of third parties had intervened. (*Cook v. Tullis, supra.*) In the action of replevin the defendants were entitled to give evidence of the ratification. A supplemental pleading would have furnished plaintiffs no greater knowledge in regard to the defense than they possessed before it was filed, and would have raised no right in defendants to other or additional defenses than they were entitled to make under the general denial. Nor need the fact of the filing of such pleadings, or the want of it, materially affect an adjustment by the court of the costs. Nor do we think we are straining the measure of justice in so holding. It was certainly but just and right, if the plaintiff discovered that the agent, Adams, had used a part of the

money paid to him by defendants in the cattle transaction in paying the plaintiffs' debts, and the jury has said it was so by its findings, and that Adams did it within the scope of his authority, that plaintiff should return the amount so used for its benefit, or tender a return of it, if it desired to repudiate the whole of the act of the agent when he sold the cattle to defendants as unauthorized, and this whether the discovery was made before or after commencement of the action to recover the cattle. "The ratification of the unauthorized agreement of an agent relates back to its inception, and in an action brought thereon such ratification need not be pleaded, but may be shown in proof of the agreement." (*Long v. Osborn*, 59 N. W. Rep. [Ia.], 14.) It was competent for the defendants in this action to prove the ratification which occurred on the part of plaintiff after the commencement of this suit, and without filing a supplemental answer. (*Persons v. McKibben*, 5 Ind., 261; *Gelatt v. Ridge*, 117 Mo., 555.)

We have examined the opinion in the case of *Wittenbrock v. Bellmer*, 57 Cal., 12; also, *Read v. Buffum*, 79 Cal., 77, and the note to the opinion in the case of *Persons v. McKibben*, 61 Am. Dec., 85, to all of which attention was directed by counsel, and have given to the reasoning therein contained due weight, but do not consider it sufficiently forcible to govern our conclusions in the present case. It is true that the jury made a further finding on this same subject, the question which produced it and the answer being as follows: "If you find that Adams so paid out and appropriated to plaintiff's use and benefit some of the money received by him from defendants for the cattle in controversy, and that plaintiff, since this suit was commenced, discovered that fact and has not paid or tendered back to the defendants the money so paid out and appropriated, state whether the plaintiff has, by reason thereof, ratified the sale of the cattle by Adams to the defendants. Answer: No." If it be conceded that when the jury had reached the conclusions on this subject which it had announced in its an-

swers to the previous questions, and which we have here-
inbefore quoted, that it but amounted to evidence of a
ratification, from which an inference of ratification might
be drawn, and was yet a question of fact to be submitted
to the jury for their determination, it must be said that it
was one as to which the conclusion was irresistible that
there could be but one true one, i. e., that there had been
a ratification.    The answer to the eleventh paragraph
was manifestly wrong; it could be but a conclusion from
the other findings, was dependent upon them for its ex-
istence, and could not be different and directly to the
contrary of its constituents, the facts on which it was
predicated, and hence it must, in this consideration, be
disregarded.

It is urged that the case falls within the rule announced
in the case of *Thacher v. Pray*, 113 Mass., 291, wherein it
was held: "One without authority sold the plaintiff's
chattel to the defendant, receiving in payment a bank
check, which he indorsed and gave the plaintiff in pay-
ment of a debt he owed him.    The plaintiff, in ignorance
of the sale, collected the check and applied the proceeds
to the payment of that debt.    In an action to recover the
value of the chattel, held, that the plaintiff's receipt and
collection of the check were not a ratification of the sale,
and that he had a right to appropriate the check to the
extinguishment of the debt in payment of which it was.
given him."   In the case referred to it appeared that one
Gray, having in his possession a horse belonging to
the party, afterwards plaintiff in the action, made an
unauthorized sale of the horse to a third person, receiving
in part payment therefor a check in the amount of $100.
Gray was at the time indebted to the owner of the horse
for some potatoes which he had purchased, and in partial
payment of the account indorsed the check for $100 and
forwarded it by letter to his creditor, who received it and
gave Gray credit for its amount on the potato account.
All this was done before the creditor became aware of
the fact of the unauthorized sale of his horse by Gray,

and that the check for $100 had been derived from such sale. Subsequent to his discovery of the sale of the horse, and that the check for $100 was a portion of the proceeds of the sale, the owner commenced an action against the party who purchased the horse from Gray to recover its value, and refused to return the $100 to the defendant, and the supreme court held as we have just quoted. If we are governed alone by the facts as presented in the special findings on the subject, as, indeed, we must be, then there is a very important and an essential element of the Massachusetts case, and one upon which, to a large extent, the decision hinges, that is entirely lacking in this case, i. e., the payment of an indebtedness by the agent to the principal with the funds derived from the sale of the horse. If we look beyond the special findings and go back to the evidence, the result of our explorations in behalf of the contentions of plaintiff will afford substantially no greater assistance. It appeared in evidence that when Adams was given charge of the ranch of plaintiff, it was of his instructions that he should send a report every month to the office of the company at Milwaukee, in which should be stated the amount of wages due the cowboys and other employes of the ranch for the current month, also the amounts of bills for groceries and supplies of all kinds, and all other expenses, of any nature, incurred necessarily in conducting the ranch, and a draft would be sent to him by the treasurer in such sum as was required, to be by him cashed and the money properly disbursed. It is also claimed that there was evidence to show that Adams had not applied some of the funds sent him by the company to the purposes for which they were intended and forwarded, but had appropriated them to his own use and left the bills unpaid, and that he had thus become indebted to the company; that the bills which he paid with the money obtained from defendants for the cattle were the particular ones for the payment of which money had been sent him by the company, and wrongfully used by Adams; that his

payment of them by the money received from defendants
in the unauthorized sale of the cattle to them operated a
discharge of his obligations, paid his indebtedness to the
company, and hence the company's reception and reten-
tion of the money so paid could not and did not work a
ratification of the sale of the cattle.   Whether this would
be a tenable position, as we view it, we are not now called
upon to decide.   We have read the record carefully and
have not discovered any evidence to the effect that any
money was ever sent to Adams to pay the specific items
of account or expenses which he did pay with the money
which defendants paid him for the cattle.   There are
some general statements that he had forwarded reports
of expenses and funds had been sent him to pay the ac-
counts shown in the reports, but whether the items re-
ferred to had ever been included in any of the reports or
any money sent him to meet them does not appear.   It
was shown that Adams had received drafts sent to him
by the treasurer of the company, and it was also shown
that he had an account with a bank or banks, not in the
name of the company, but at all times in his own name;
that he had deposited drafts sent to him by the company
in the bank to his own credit, and that he drew checks
against this account to pay expenses of the business of
the company at the ranch, and it is not shown whether
all of it was applied in the proper direction or not.   In
fact there was no evidence to sustain a misappropriation
by Adams of any sum of money sent to him by the com-
pany.   There were some general statements from which
such an inference might possibly be drawn, but there
was nothing as to any specific sum or sums sufficient to
make the basis for a certain and ascertained claim, such
as was necessary to warrant the assertion that in paying
the bills of the company with the money obtained from
defendants, Adams was paying such debt to the company.
This element not being present in this case, the rule in
the Massachusetts case is not applicable or governing
herein.   It follows from what has been said that the

special findings of facts were inconsistent with the general verdict, and the trial court erred in rendering judgment herein for the plaintiff.

As we have before expressed, the matters passed upon in the opinion which followed the former hearing were not, owing to the defective assignment of error in relation to the instructions, properly before the court, and hence we need not now re-examine them. The judgment of the district court is reversed and the case remanded.

REVERSED AND REMANDED.