Gosnell v. Webster.

We therefore recommend that the judgment of the district court be affirmed.

BARNES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

---

JOSHUA E. GOSNELL ET AL. v. JOHN R. WEBSTER.

FILED JANUARY 6, 1904. No. 13,310.

1. **Replevin:** PLEADINGS. Petition and amended petition examined, and *held* to state the same cause of action.

2. **Chattel Mortgage:** DESCRIPTION. Evidence examined, and *held* not to justify the contention of plaintiffs in error that the mortgage in question was void as to the chattels in question, because of insufficient description or identification thereof in the mortgage.

3. **Evidence.** Where one party to an action has introduced letters constituting a part of a correspondence between the other party to the action and a third party, such other party is entitled to show the entire correspondence upon the same subject.

4. **Sale of Mortgaged Chattels:** RATIFICATION. Where a mortgagor, without authority from the mortgagee, sold property covered by a chattel mortgage, and paid a debt to the mortgagee, other than the one secured by the mortgage, with a portion of the purchase money, which was received and credited by the mortgagee without knowledge of the fact that the money had been so obtained, the failure of the mortgagee to refund the money so received, upon learning the source from which it was derived after commencing an action against third parties to whom the mortgagor's vendee had sold the chattels, does not thereby ratify the sale and deprive himself of the right to recover possession of the chattels. *Johnston v. Milwaukee & Wyoming Investment Co.*, 49 Neb. 68, distinguished.

5. **Evidence.** Evidence examined, and *held* to be sufficient to sustain the verdict.

ERROR to the district court for Harlan county: ED L. ADAMS, JUDGE. *Affirmed.*

48

*Samuel P. Davidson,* for plaintiffs in error.

*Riley L. Keester, John C. Wharton* and *William Baird,*
*contra.*

GLANVILLE, C.

Plaintiffs in error were defendants in a replevin action
tried in the district court for Harlan county, and bring
error, seeking to reverse a judgment against them. The
writ was issued from the county court and, after appraise-
ment of the property taken, the case was certified to the
district court under the provisions of section 9, chapter
20 of the Compiled Statutes. The defendant in error
claimed title to the cattle in question by virtue of a chattel
mortgage and in his petition and affidavit filed in the
county court described the mortgage as, "A certain chattel
mortgage executed on the 27th day of December, 1900, in
Deuel county, Nebraska, by Wm. E. Colvin to the above
named plaintiff to secure the payment of one note for
the sum of $31,000." After the case had been certified to
the district court he filed an amended petition wherein he
described the mortgage as, "A chattel mortgage executed
by Wm. E. Colvin to John R. Webster, the above mentioned
plaintiff, and Alfred B. De Long, bearing date the 27th day
of December, 1900, and given by the said Colvin to the
plaintiff and said De Long   *   *   *   to secure the pay-
ment of one promissory note for the sum of $8,000,   *   *   *
payable to the order of Alfred B. De Long, and the pay-
ment of one promissory note executed by the said Wm. E.
Colvin and payable to the order of the plaintiff John
R. Webster for the sum of $31,000." The petition, and
also the evidence in the case, shows that the debt se-
cured to Alfred B. De Long had been fully paid. The
affidavit was amended in the same manner. The plaintiffs
in error made a motion to strike the amended petition
from the files because of a change of the issues. This
was overruled and alleged as error. There is no merit in

the contention; the same mortgage is referred to and relied upon, and the same lien is made the basis of the mortgagee's right in all the pleadings.    There is a more accurate description, perhaps, in one than in the other, but the amendment was proper both in the petition and in the affidavit.

The second contention touches the sufficiency of the evidence and the refusal of the one instruction, and is to the effect that the description of the cattle in the mortgage is insufficient because, it is claimed, there were seven head of cattle upon the ranch in the herd with the cattle in question, bearing the same description at the time the mortgage was given, which were not covered thereby.   The cattle in question were, in the mortgage, included in the description "600 yearlings, mixed steers and heifers, all branded  $\infty$  C on the left hip." The brand is called the "lazy S C" brand.   The mortgage also covered 295 two-year-old heifers and 230 two-year-old steers, all branded in the same way, and purported to cover all the cattle only so branded kept on the Colvin ranch.   It seems that just prior to the date of the mortgage in question a part of the herd of cattle upon the Colvin ranch, owned by Spalding & Clements, were sold to the mortgagor Colvin, and a part were retained and left upon the Colvin ranch by Spalding & Clements.   In cutting out the Spalding & Clements cattle, and branding them with a tally brand to distinguish them from the cattle sold to Colvin, a mistake in the number was made, so that Spalding & Clements got seven head less than they were entitled to under the contract, and when they removed their cattle from the ranch, which was after the date of the sale by Colvin through which plaintiffs in error claim title, seven head of cattle branded only with the "lazy S C" were delivered to Spalding & Clements to make up the supposed shortage.   There is no evidence tending to show that more than 600 yearlings so branded were upon the ranch when the mortgage was made, nor is there any evidence to show that any of the seven head of

cattle cut out for Spalding & Clements were of that class. Moreover, the evidence will justify a holding that, as against the defendant in error, Spalding & Clements would be estopped to claim any of the cattle upon the ranch not bearing their tally brand, and that, in fact, the seven head turned over to them as stated were covered by the mortgage and could have been held by the mortgagee. There is no contention that the mortgage otherwise fails to sufficiently identify the cattle covered thereby, and we think the steers recovered by the mortgagee in this action were sufficiently identified and described in the mortgage. The instruction upon this issue, asked and refused, was based upon the presence in the herd of "seven head of *cattle* branded with the ∽ C brand" not covered by the mortgage, and was properly refused.

A third contention is that the defendant in error was allowed, as a witness, to explain his own letters which had been introduced by the plaintiffs in error. We have examined the record carefully in this regard and are satisfied that there is no prejudicial error shown. Many of the letters were introduced by plaintiffs in error over the objections of the defendant in error, and were written at such times, and in such form, as to have no bearing upon the issues being tried, except as certain inferences might be drawn therefrom, and there was no error in allowing the defendant in error to so explain the letters.

Complaint is made that certain questions asked defendant in error upon cross-examination were ruled out. The object of certain of these questions is stated in the brief, as follows: "These questions were asked for the purpose of securing an admission from Mr. Webster that he held a mortgage on the entire herd of Mr. Colvin's cattle, or, if he denied having such a mortgage, for the purpose of laying a foundation for his impeachment by the testimony of Mr. Noleman." What other mortgage was held by Mr. Webster, or what was covered thereby, has no bearing upon the issues in this case, and the questions were irrelevant, and the answers would not

be a good foundation for impeaching testimony. Besides, the information as to the other mortgage, and what it covered, was ·obtained by plaintiffs in error by the answer to a subsequent question which they sought to strike out. The other questions referred to in the brief as ruled out were all allowed later in the examination, and the error, if any, was amply cured.

The fourth contention relates to the admission of portions of a letter written by Colvin. Part of the letter was introduced by plaintiffs in error, and defendant in error was allowed to put in other parts. In the same connection, complaint is made because certain letters written by Colvin to Webster, and by Webster to Colvin, were allowed to be put in evidence after plaintiff had introduced a part of the correspondence on the same subject, between the same parties. There is no error in this regard. The letters introduced by plaintiffs in error were numerous, extending over some period of time, and those put in by defendant in error were a part of the same correspondence and related to the same subjects and matters. Section 339 of the code reads as follows:

"When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; thus, when a letter is read, all other letters on the same subject between the same parties may be given. And when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence."

The next contention is that there are 143 head of cattle involved, and the jury found for the defendant in error as to but 120, and for the plaintiffs in error as to the remainder; and that the verdict can not stand because it appears to have been a compromise verdict, there being, as it is claimed, no proof upon which such a finding could be based. During the course of the trial it was stipulated by the parties that there were 120 head of cattle in

the herd, taken upon the writ, branded with the "lazy S C" brand. The witness Riley, who purchased the cattle from Colvin and sold them to the plaintiffs in error, testified that there were 120 head of cattle in the bunch, taken upon the writ in the action, that he bought from the mortgagor Colvin. There is no testimony clearly identifying more than the 120 head of these cattle as covered by the mortgage in question, and the verdict in this regard is clearly proper under the evidence.

Complaint is made of the form of the verdict. It is in exact accordance with an instruction of the court, which was not objected to or complained of, and appears to be in proper form to respond to the issues and support the judgment. ·

Another contention is that there is no proof in the record that the mortgagor Colvin was a resident of Deuel county at the time the mortgage was given, in which county, only, the mortgage was on file at the time the mortgagor sold the cattle in question. While it may be true that no direct statement of that fact is contained in the record, yet we think it sufficiently appears. The mortgage itself so describes him. An extended correspondence between the defendant in error at Omaha and the mortgagor in Deuel county is shown in the record, and several of the witnesses refer to the time when Mr. Colvin "left" or "went away." The witness Noleman, one of the attorneys for plaintiffs in error, testified to being at Mr. Colvin's ranch, which is located in Deuel county, and said "Mr. Colvin had gone away." He stated that he got certain letters "out of Mr. Colvin's desk. I didn't have the permission of any one, except Mrs. Colvin told me, 'there were his books, and to go and examine them.'" In reference to another matter he states, "That was at the Colvin ranch house, at the home ranch." The jury were told that, in order to recover, the plaintiff in the action must satisfy them, among other things, "that his mortgage was duly filed for record in the county where the mortgagor resided at the time the said mortgage was

given." We think the evidence fully justifies a finding for defendant in error upon that issue.

There is but one other ground for reversal urged. It appears from the evidence that a check given by Riley for a portion of the purchase money for the bunch of cattle he purchased from Colvin, which included those in question, was sent to the defendant in error, and the proceeds thereof received and applied by him in payment of a debt of Colvin's to him, other than the debt secured by this mortgage; and it is urged that he can not prevail in this action because he has been informed, since its commencement, that such check was given in part payment for the bunch of cattle so sold, and he has not offered to refund the money. It is contended that this brings the case within the rule announced in *Johnston v. Milwaukee & Wyoming Investment Co.*, 49 Neb. 68, wherein it is held:

"The acceptance or retention by the principal, after knowledge of the facts, of the fruits of an unauthorized act of an agent is a ratification of the agent's act, and it relates back to the time of the act and makes it as if the agent had been empowered to perform it at its date, and the principal is bound in all respects as if he himself had been the actor."

In that case, Adams, who made the sale, made it as agent of his employer, the owner of the cattle sold, and of the ranch of which he was manager. In the present case, there was no pretense of agency, nor was there any understanding on the part of Riley when he bought the cattle that Colvin sold as agent for any one. In the *Johnston* case, Adams used the proceeds of the sale for his employer, by paying for supplies used, but in this case, Colvin used the money for his own benefit, in paying his own debt, and he got credit for the amount upon his debt.

We think this case falls within the principle of *Thacher v. Pray*, 113 Mass. 291, discussed and distinguished in the *Johnston* case, wherein it is said:

"One without authority sold the plaintiff's chattel to

the defendant, receiving in payment a bank check, which he indorsed and gave to plaintiff in payment of a debt he owed him. The plaintiff in ignorance of the sale collected the check, and applied the proceeds to the payment of that debt. In an action to recover the value of the chattel, *held,* that the plaintiff's receipt and collection of the check were not a ratification of the sale; and that he had a right to appropriate the check to the extinguishment of the debt in payment of which it was given him."

In distinguishing the case, this court said:

"There is a very important and an essential element of the Massachusetts case, and one upon which, to a large extent, the decision hinges, that is entirely lacking in this case, *i. e.,* the payment of an indebteddness by the agent to the principal with the funds derived from the sale of the horse."

In the course of the opinion in *Thacher v. Pray, supra,* it is said:

"It does not affect the rights of the parties that the same check which the defendant gave Gray was given to the plaintiff, if it was applied to the settlement of an existing account between them, without any notice that it was a part of the proceeds of the unauthorized sale of the horse. Being indorsed by Gray, it was in the plaintiff's hands payable to bearer, transferable by delivery, and subject to the same rules as bank bills, coupons, or other instruments payable in money to bearer. It is as if Gray had cashed the check and sent the identical or other bills to the plaintiff."

In this case the equities are more with the mortgagee than they were with the owner in the Massachusetts case.

It appears from Mr. Riley's testimony that he purchased 200 head of steers from Colvin, but he thinks he actually got only 189, and that 120 of the same steers were among those taken upon this writ. What became of the others is uncertain, but he is quite positive that some of them were shipped and sold on the market. They were all undoubtedly covered by Webster's mort-

gage.  Mr. Riley has placed beyond the reach of the mortgagee a very considerable portion of the herd, only in part paid for with the check which Colvin used in paying his debt to Webster.  None of the plaintiffs in error furnished any of the money which was paid by Riley for these cattle, and yet they claim that before Webster may take the cattle he must pay, or offer to pay, to them the money paid by Riley to Colvin and used by him, while Mr. Riley still retains an unknown amount received from the sale of other cattle covered by Mr. Webster's mortgage.  In this we think they are wrong.

In view of the facts established by the evidence, we think the defendant in error has not ratified the sale through which plaintiffs in error claim title, and that the court did not err in refusing the instruction asked directing a verdict for them, "if, after such sale was made, said Webster received a portion of the purchase price of said cattle from Colvin and retained the same after he had reasonable grounds to believe it was a portion of such purchase price."  The verdict is supported by the evidence, and we find no error in the record.

We therefore recommend that the judgment of the district court be affirmed.

BARNES and ALBERT, CC., concur.

By the Court:  For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.