Citizens' Bank of Greenville v. Wilks P. Kretschmar, Receiver of Merchants' & Planters' Bank of Greenville.

[44 South., 930.]

1. PAYMENT. *Check. Presumption. Dishonor. Effect. Evidence.*

The delivery of a check by a debtor to his creditor is presumed not to have been accepted as payment, in the absence of evidence of an agreement that it should be so received; and, where a check, given to pay a debt, is not honored on due presentation the original indebtedness continues to exist, and recovery may - be had thereon without resorting to the debtor's liability on the check.

2. SAME. *Acceptance as payment. Fraud.*

Although a creditor accept his debtor's check in payment, the debt will not be extinguished and may be enforced, if the check be drawn on a bank in which the debtor had neither funds nor credit, there being in such case no consideration for the creditor's agreement to so accept the check.

3. SAME. *Insolvency. Receiver. Set-off.*

Where one bank received a draft from another in settlement of a debt, forwarded it in usual course for collection and, before notice of its dishonor, gave its due bill for later transactions to the drawer bank, it is entitled upon dishonor of the draft and the insolvency of the drawer bank, in a controversy with the receiver of the insolvent, to have the one debt set off against the other.

4. SAME. *Counterclaims.*

The courts liberally allow counterclaims in cases of insolvency to the end that the true balance only may be required to be paid.

FROM the chancery court of Washington county.

HON. PERCY BELL, Chancellor.

The Citizens' Bank of Greenville, the appellant, was the complainant in the court below, the appellee, Kretschmar, receiver of the Merchants' & Planters' Bank of Greenville, was de-

fendant there. From a decree denying an equitable set-off against the receiver, the complainant appealed to the supreme court.

On June 6, 1905, three days before the failure of the Merchants' & Planters' Bank of Greenville, appellant, the Citizens' Bank of Greenville, in a clearance between the two banks received a New York exchange draft for $1560.66 from the Merchants' & Planters' Bank, and promptly forwarded the same by mail for collection. A subsequent clearance between the two banks, June 9, 1905, showed the Merchants' & Planters' to be a creditor of the Citizens' Bank, by virtue of sundry checks held by it, in the sum of $964.59, and this amount the cashier of the Merchants' & Planters' Bank requested the Citizens' Bank to place on its books to the credit of one Atterbury, assignee of the Merchants' & Planters' Bank, the said bank having just a few minutes before made an assignment to Atterbury as assignee for the benefit of its creditors. The Citizens' Bank, having no further knowledge of the circumstances of the assignment than as reported by the cashier, credited the said amount of $964.59 to the assignee. A few moments later the Citizens' Bank received a telegram from its New York correspondent that the check for $1560.66, given to the Citizens' Bank by the Merchants' & Planters' Bank on June 6, had been protested for nonpayment. Whereupon the Citizens' Bank charged to the account of Atterbury, assignee, the sum of $1560.66, representing the protested draft, and credited said account with the sum of $964.59 above mentioned, claiming that it had been deceived and defrauded by the Merchants' & Planters' Bank on June 6 in that it caused appellant to accept the New York draft for $1560.66 which was worthless. Subsequently the Citizens' Bank instituted suit in equity [in form a cross-petition under statutory proceedings in assignment proceedings] against Kretchmar, receiver of the Merchants' & Planters' Bank, successor of Atterbury in the trust, to enjoin the receiver from proceeding with a suit at law to recover judgment against it for

91 Miss.—39

the $964.59; and for the enforcement of an equitable set-off in its favor against the receiver; satisfying the $964.59 debt by applying it as a credit on the $1560.66. The receiver's answer to the bill denied the equitable right of the complainant to the set-off. The chancery court rendered a decree against the Citizens' Bank, and, since the parties had adjusted the pleadings to that end, rendered a decree in favor of the receiver against the Citizens' Bank in the sum of $964.59 less credit allowed for certain dividends to be paid by the receiver to the Citizens' Bank, as creditor of the insolvent.

*H. C. Watson,* for appellant.

The appellant should have been allowed the set-off prayed in the petition: (a) On account of its banker's lien; (b) as an equitable set-off; (c) as a common law set-off; (d) because the receiver took no higher rights than the assignor possessed.

A bank has a general lien on money or funds of a depositor in its possession for a balance on general account. Morse on Banking (4th ed.), § 324. A lien obtains against all moneys or securities of the customer coming into the bank's possession, in regular course of business, for any balance due it on general account. *Cockrill* v. *Joyce,* 62 Ark., 35; S. W. Rep., 221; Jones on Liens (2d ed.), §§ 241, 244, 246, 247; *Reynes* v. *Dumont,* 130 U. S., 392.

Appellant was entitled to enforce its right to an equitable set-off against appellee, because the same rule as to set-offs applies in the case of banks as obtains in the case of individuals. *Eyrich* v. *Bank,* 67 Miss., 76. Equity will enforce set-offs which would not be enforceable at law. One such instance is when a debt against which the set-off is sought to be used in not yet due. *Scott* v. *Armstrong,* 146 U. S., 499; 36 L. Ed., 1059; 2 Rose's Notes, 272; *Thomas* v. *Exchange Bank,* 99 Iowa, 68 N. W., 730; 47 Am. St. Rep., 579. An equitable set-off may also be enforced on a note falling due after the bank becomes insolvent and a receiver has been appointed. *Phillier*

v. *Yardlet,* 62 Fed., 251; 25 L. R. A., 832; *Mercer* v. *Dyer,* 15 Mont., 39, Pac. 315; Morse on Banking (4th ed.), § 329–330. Items from the Merchants' & Planters' Bank having been received on deposit by appellant, the right of set-off inured immediately. *Mercer* v. *Dyer,* 39 Pac., 315; *Scott* v. *Armstrong,* 146 U. S., 499; *Van Wagoner* v. *Gas Light Co.,* 23 N. J. Law, 283; *Yardley* v. *Clothier,* 49 Fed., 337.

The set-off is a good common law set-off as well as an equitable one. Waterman on Set-off, §§ 442, 444; *Miller* v. *Receiver,* v *Paige,* 444; *Jackson* v. *Jackson,* 2 Paige, 581; *Holbrook* v. *Receiver,* 6 Paige, 620.

It is well settled that the assignee or receiver of an insolvent corporation takes no higher rights than the assignor held; the assignee or receiver not being a purchaser for valuable consideration, but being treated in law as a voluntary assignee. Alderman on Receivers, 8; *Paine* v. *Sykes,* 72 Miss., 352.

If the rule be as above laid down in the foregoing authorities, that an equitable set-off will be enforced against an insolvent bank in favor of one of its customers, or in favor of the bank in which the insolvent bank was a depositor, the rule is applicable to the case at bar. The checks drawn on the Citizens' Bank, and held by the Merchants' & Planters' Bank, became the property of the Merchants' & Planters' Bank on receiving them, and the receiver claims ownership thereof by virtue of this fact. If these checks belonged to the Merchants' & Planters' Bank, it follows that when they were by it endorsed and delivered to the Citizens' Bank, they became its property, and remained its property for two hours before the failure of the Merchants' & Planters' Bank. It was not contemplated that the checks were ever to be turned back to the Merchants' & Planters' Bank under the terms of the clearance, but on the other hand, the only item that was to be taken and liquidated was the due bill of the Merchants' & Planters' Bank. The fact that the Citizens' Bank had credited the checks to the receiver, did not operate as a transfer to him of the money called for

thereby, but was simply a recognition of the receiver as the legal successor and representative of the Merchants' & Planters' Bank.

*LeRoy Percy,* for appellee.

I am unable to discover any principle, whatever, whether based upon bankers' lien, common law or equity, upon which appellant's right to a set-off, under the facts of this case, can be successfully asserted. The authorities cited by learned counsel for appellant might be of some avail if the Citizens' Bank had placed the money in question to the credit of the Merchants' & Planters' Bank, and that bank had made the assignment to Atterbury, the assignee and the assignee then, by virtue of the assignment, had claimed to be the owner of the deposit. Under such a state of facts, the appellant unquestionably could refuse to pay the money to the assignee, and could have appropriated it on the debt due to it by the insolvent bank. But it is perfectly clear that the checks held by the Merchants' & Planters' Bank on the Citizens' Bank, aggregating $964.59, did not alone constitute claim against the Citizens' Bank, nor operate, prior to presentation, as an assignment *pro tanto* of the funds of the respective drawers, in the hands of the Citizens' Bank. 7 Cyc., 650.

It is well established that a check does not constitute a debt from the drawee to the holder, so as to avail such holder as a set-off against an insolvent drawee. *Northern Trust Company* v. *Rogers,* 60 Minn., 208. *Vice versa,* it is clearly true that a check held by an insolvent holder is not a debt of the drawees, which can be offset on a claim by such drawee to such holder. When, then, did the relationship of debtor and creditor arise? When did the Citizens' Bank ever become indebted to the Merchants' & Planters' Bank on these checks, if at all? When the checks were turned over to the Citizens' Bank under the preliminary clearing, they were turned over under an arrangement by virtue of which, if it became final, the Merchants' & Planters'

Bank owed the Citizens' Bank $1,462. The clearing was an entirety when consummated. The Citizens' Bank was to hold these checks, because the Merchants' & Planters' Bank was to hold the checks of that institution, amounting to $2426.59, which had been surrendered to it by the Citizens' Bank. When, for the benefit of the Citizens' Bank, this arrangement was revoked by mutual consent, the Citizens' Bank became the holder and owner of the $2426.59 in checks drawn on the Merchants' & Planters' Bank, and looked to the drawers of those checks, instead of the insolvent drawee, for the amount thereof; and the Merchants' & Planters' Bank became the holder and owner of the $964.59 in checks drawn on the Citizens' Bank, and then the Merchants' & Planters' Bank had the proceeds of these checks placed to the credit of the assignee. The relationship of debtor and creditor sprung up by agreement between the parties, and by the act of the Citizens' Bank in placing this amount to the credit of the assignee, and not between the two banks, but between the assignee and the Citizens' Bank. As the fund in question was placed to the credit of the assignee, he could have drawn it out at once. The money would have been paid to him on his demand, instead of being placed to his credit, had he so desired. Now, if the money had been so paid directly to assignee, and been subsequently returned by the assignee to the bank, is it possible that the money so deposited, could be treated as belonging to the Merchants' & Planters' Bank, and applied to the payment of a debt due by the Merchants' & Planters' Bank to the Citizens' Bank? The answer must, of course be in the negative. The $964.59 passed to the assignee by virtue of the assignment, and did not represent any debt against the Citizens' Bank, but instead represented debts in favor of the assignee against the drawers of the checks aggregating such amount. The assignee could have transferred the amount to a third party, or to another bank.

The Citizens' Bank paid the checks, aggregating such amount, not to the Merchants' & Planters' Bank, but to the assignee,

and the assignee's property in the checks was by payment simply changed to property in the deposit. There was never any mutuality of indebtedness between the two banks, and, hence, no mutuality upon which the doctrine of set-off can be invoked, and, accordingly, a basis for a set-off was lacking.

There is no principle known to the law under which property belonging to an assignee can be taken and used in the payment of a debt due by the assignor. The appellant had no more right to attempt to use the property of the assignee in the payment of the debt due to the insolvent Merchants' & Planters' Bank, than it would have had to seize any of the property belonging to the assignee, in payment of said debt.

The appellant had the right to have refused to pay some, or all, of the checks, aggregating $964.59, because of the insolvency of the drawers, lack of funds to their credit, or for other reasons; and the effect of such refusal would merely have been to leave the checks, instead of the deposit, as an asset in the assignee's hands. But the checks would have been the property of the assignee, not the property of the insolvent Merchants' & Planters' Bank. Yet the Citizens' Bank, appellant, is trying to use the property of the assignee for the payment of the debt of the Merchants' & Planters' Bank.

If the appellant had the right to appropriate this money to the payment of the indebtedness due by it to the Merchants' & Planters' Bank, then there is no reason, in case the assignee had made further collections of a subsequent sum and deposited the same in the Citizens' Bank to his credit, why the appellee could not also have applied such subsequent deposit of such collections to the extinguishment of the balance of indebtedness due to it by the insolvent Merchants' & Planters' Bank.

MAYES, J., delivered the opinion of the court.

There was, in truth, no indebtedness on the part of the Citizens' Bank to the Merchants' & Planters' Bank at the date of the insolvency of the latter. It is true that it was stated by the

Citizens' Bank that there was a balance of $964.59, and this sum was passed to the credit of the receiver on the books of the Citizens' Bank; but the Citizens' Bank was at that time ignorant of the fact that the draft executed by the Merchants' & Planters' Bank to cover a balance of $1,560.66 due on June 6th settlement had not been paid. The check given by the Merchants' & Planters' Bank to pay this balance due by it to the Citizens' Bank on June 6, 1905, was a worthless check and did not extinguish the debt; but the $1,560.66 was a continuing, subsisting debt, due from the Merchants' & Planters' Bank to the Citizens' Bank on the 6th day of June, after the draft was given to the Citizens' Bank to settle this amount, and it was a valid, continuing, and subsisting debt at the time that the credit of $964.59 was entered to the credit of the receiver of the Merchants' & Planters' Bank, although the Citizens' Bank was unaware of it at the time. A check is not payment, unless the check is paid, unless it is specially agreed by the parties that the check, whether good or not, shall have that effect; and the burden of proof always rests on the party asserting it to show that the check was to have that effect. The presumption is against its being so received, and this presumption can only be overcome by clear proof to the contrary. If there was any ultimate liability on the part of the Merchants' & Planters' Bank in case this check had not been paid and the bank was a going bank, then it cannot be said that it operated as a payment of the $1,560.66, so as to extinguish the debt. There is no proof to establish the fact that the Citizens' Bank did accept this New York draft in payment, so that there would be no ultimate liability on the part of the Merchants' & Planters' Bank in event of nonpayment. In 22 Am. & Eng Ency. of Law (2d ed.) p. 569, it is said: "It is well-settled and universally recognized rule that, when a debtor has given his check for the amount of his indebtedness, the *prima facie* presumption arises that the check was taken merely as conditional, not absolute, payment, and in case the check is not honored upon due presentation the

original indebtedness for which it was given continues to exist, and recovery may be had by the creditor without resorting to the debtor's liability on the check." *Taylor* v. *Conner,* 41 Miss., 722; 97 Am. Dec. 419; *Wadlington* v. *Covert,* 51 Miss., 631; In the case of *Fleig* v. *Sleet,* 43 Ohio St. 53; 1 N. E. 24; 54 Am. Rep. 800, it is said that, "where a debtor makes and delivers a check to his creditor in payment of an account upon a bank where the debtor has neither funds nor credit, it is not a payment of the account, although the creditor receives it as such. In such cases there is no satisfaction of the indebtedness. Such check is valueless. By its delivery it is impliedly represented that there are funds in the hands of the drawee subject to its payment. Relying upon this representation, it is accepted as payment. Its falsity relieves the creditor from his agreement, no matter whether the act of the debtor is fraudulent or *bona fide.* The agreement is without consideration and void. The account remains an existing and continuing cause of action." *Weddigan* v. *Boston Elastic Fabric Co.,* 100 Mass., 422.

If there was no payment of this debt on June 6th by the New York draft, on which payment was refused on the 9th of June, then the Citizens' Bank held the claim at the date of the insolvency of the Merchants' & Planters' Bank, and all the equities that existed as against the Merchants' & Planters' Bank existed against its assignee at the time he took charge of their property. The mistake in the argument of counsel for appellee, in our view of it, is in the attempt to distinguish the right of the assignee of the bank from the bank itself. If the Merchants' & Planters' Bank itself was trying to defeat the Citizens' Bank in the attempt to offset the $1,560.66 due it by reason of the nonpayment of this New York draft on June 6th, as against a credit placed on its books in favor of the Merchants' & Planters' Bank on June 9th, we do not think it would be seriously contended that the Citizens' Bank could not do this. If, then, it would be good as against the bank, it is good as against the assignee of the bank. Why was this money placed to the credit

of the assignee? Certainly it cannot be claimed, in view of this record, that the assignee took in any other way than as the representative of the bank and because of its insolvency. In § 186, vol. 1, of Pomeroy's Equitable Remedies, it is held: " It is generally held that a receiver can occupy no better position than those for whom he acts and is appointed, that he is in the place of the ones he represents, and has only such rights as they had, so that the rights and liabilities of third parties are not increased, diminished, or varied by his appointment. There passes to the receiver the property and the rights of the one from whom he takes, precisely in the same condition and subject to the same equities as before his appointment, and any defense good against the original party is good against the receiver." *Von Wagoner* v. *Gas-Light Co.,* 23 N. J. Law, 285; *Falkenbach* v. *Patterson,* 43 Ohio St., 359; 1 N. E., 757; *Coope* v. *Bowles,* 42 Barb. (N. Y.), 87; *Paine* v. *Sykes,* 72 Miss., 351; 16 South., 903; *Paine* v. *Hotel Co.,* 60 Miss., 360; *Eyrich* v. *Capital State Bank,* 67 Miss., 60; 6 South., 615. In the case of *Yardley* v. *Clothier,* 51 Fed., 506; 2 C. C. A., 349; 17 L. R. A., 462, it is said: " The rule of set-off is well understood to be that in all cases of mutual credit only the balance that shall appear to be due upon the adjudication of the mutual accounts should be paid, and it is that balance only which is the debt and is recoverable, that mutual obligations for the payment of money cancel each other, and that the death or insolvency of either party will make no difference in the adjustment of their mutual accounts. This rule may be modified by exceptional circumstances or by statute, but is generally applied as here stated. The allowance of set-off has been frequently objected to in the distribution of insolvents' assets and in the settlement of decedents' estates, for the reason that it would create preferences among creditors; but the controlling weight of authority has established the doctrine that, in the absence of express statutory prohibition, a set-off of a debt owing to the defendant will be allowed, if it was due when

the creditor's rights attached, whether the debt sued on was due at the same time or matured subsequently." The trend of all modern authority leans toward liberality in the allowance of set-offs, and particularly is this true in the case of the insolvency of the party against whom the set-off is claimed, to. the end that only the true balance may be required to be paid to the representative of the estate of the insolvent.

*Reversed and remanded.*