MAYES v. COLEMAN ET AL.

[71 South. 14.]

1. VENDOR AND PURCHASER. *Contracts. Constitution. Term of payment. Waiver. Mortgages. Vendor's lien. Priority.*

Where complainant through her agent and attorney entered into a written contract for the sale of lands, agreeing in consideration of two hundred dollars to be paid in Jackson, Mississippi, free from any exchange and the further consideration of one thousand dollars, to be paid in cash at Jackson free of any exchange, to convey the defendant a specified tract of land, and the contract provided that it should be sent to a bank and delivered to defendant when the first cash payment was sent to complainant at Jackson free of exchange, the deed to be made upon the same condition. New York Exchange for the first payment was sent to complainant and collected by her in the usual course of busi-

ness and the contract delivered to the bank. Thereafter defend-
ant borrowed from another a sum of money to make the last pay-
ment and gave a deed of trust on the land to secure the money,
which money was deposited in a bank at the place where the
deed was to be delivered, and that bank drew a draft on New
York, which was delivered to complainant's agent, who sent it to
complainant's agent at Jackson, but the draft was not paid be-
cause of the insolvency of the drawing bank. In such case under
the terms of the contract, payment in cash at Jackson had to be
made before defendant was entitled to a deed.

2. VENDOR AND PURCHASER. *Terms of payment. Waiver.*

In such case, the fact that complainant had previously accepted and
collected New York Exchange for the first payment, and that her
agent received a New York draft, did not show a waiver of her
right to demand payment in cash at the place agreed upon, since
it is a well settled and universally recognized rule that, when a
debtor has given his check for the amount of his indebtedness, the
*prima facia* presumption arises that the check was taken merely
as a conditional, not absolute, payment, and in case the check is
not honored upon due presentation, the original indebtedness
for which it was given continues to exist, and recovery may be
had by the creditor without resorting to the debtor's liability on
the check.

3. MORTGAGES. *Vendor's lien. Priority.*

In such case where the mortgagee of the vendee was fully informed
of the terms of the contract of purchase and was aware of the
fact that this balance of one thousand dollars was due the ven-
dor, his rights under his mortgage will be subordinated to the
rights of the vendor.

APPEAL from the chancery court of Lincoln county.
HON. P. Z. JONES, Chancellor.

Bill by Mrs. Leila B. Mayes against C. C. Coleman and
others. From a decree dismissing the bill, complainant
appeals.

The facts are fully stated in the opinion of the court.

*Geo. Butler* and *R. B. Mayes,* for appellant.

*H. V. Wall,* for appellees.

SYKES, J., delivered the opinion of the court.

The appellant filed her original bill in the chancery court of Lincoln county, praying that she be adjudged to have a lien on certain lands described in said bill, for the balance of the purchase money of one thousand dollars due her, and that said lands be sold to satisfy said indebtedness. The appellee C. C. Coleman denied that there was any balance due appellant. The appellee Bartlett Calcote, in his answer to said bill, states that he loaned C. C. Coleman the one thousand dollars with which to pay off the balance due the appellant, and that he took a deed of trust on the lands to secure the same. A decree was rendered in the court below, dismissing the appellant's bill, from which decree this appeal is prosecuted.

The material facts in the case are as follows: On August 25, 1913, Robert B. Mayes. the agent and attorney for the appellant, and C . C. Coleman, one of the appellees, entered into a written contract for the sale of the lands involved in this controversy. The said contract provided, among other things, that:

"In consideration of two hundred dollars to be paid in Jackson, Miss., free of any exchange, and the further consideration of one thousand dollars, to be paid in cash at Jackson, Miss., free of any exchange, said last amount to be paid on the first day of January, 1914, I agree, as the agent and attorney for Mrs. R. B. Mayes, to convey to C. C. Coleman a certain tract of land containing about two hundred and eighty acres and lying and being in Lincoln county, Miss.," etc.

The other paragraph in said contract material to this controversy reads as follows:

"This contract is to be sent to the Brookhaven Bank and delivered to C. C. Coleman when the first cash payment is sent to me at Jackson, Miss., free of exchange. The deed is to be made on the first of January, upon the same condition."

New York exchange for two hundred dollars was sent to the appellant, and collected by her in the usual course of business. Some time in December, 1913, the appellee Mr. Coleman became quite anxious to obtain possession of the land, and took the matter up with the husband of appellee, who wrote him that he would write an attorney in Brookhaven to prepare the deed to the land and send to him for the signature of Mrs. Mayes. In this letter he further stated that the appellee could not get possession of the land before the 1st of January. On December 27th, the husband of appellant wrote the following letter to Mr. Luther L. Tyler, Brookhaven, Miss.:

"I send you the deed to Mr. Coleman.' It is understood . this deed is not to be delivered to him until he pays the balance due of one thousand dollars, free of exchange at Jackson. In other words, if you will turn to my contract you will see that it calls for payment of this money at this place without cost to me. Please be kind enough to see that this is done, and send your bill for preparation of the deed. He has paid me two hundred dollars, leaving a balance due of one thousand dollars. Kindly acknow- . ledge receipt and oblige," etc.

The appellee C. C. Coleman, after the contract between himself and the appellant for the purchase of lands had been executed, borrowed from the appellee Calcote, the amount of one thousand dollars, with the agreement and understanding that Coleman was to pay this one thousand dollars to the appellant as the balance of the purchase money due on said land. Coleman then gave Calcote a deed of trust on said land to secure the payment of this money. Calcote was fully informed as to the contract between the appellant and the appellee Coleman, and was also aware of the fact that this balance of one thousand dollars was due the appellant; in fact, it was fully understood between Calcote and Coleman that this money was to be used for that purpose. The one thousand dollars was then deposited in the Commercial Bank & Trust Company of Brookhaven to the credit of Mr. Coleman, with

the understanding between Coleman, Calcote, and Mr. L. H. Baggett, assistant cashier of said bank, that the money was to be paid to the appellant as the balance due her for the purchase price of said land.

The testimony further shows that the appellee Coleman instructed Mr. Baggett to get the deed from Mr. Tyler and pay the balance of the purchase money on said land. It is also undisputed that Mr. Baggett was shown a copy of the contract for the purchase of these lands, executed by Mrs. Mayes and Mr. Coleman. Mr. Tyler took the deed to the bank and showed Mr. Baggett the letter from Judge Mayes accompanying the said deed. Mr. Baggett then rang up the appellee Coleman and read to him the deed, and asked him if the deed was satisfactory, to which Coleman replied that it was. Baggett then gave Tyler a New York exchange for the sum of one thousand dollars, payable to R. B. Mayes, who was the agent of appellant. This exchange was taken by the attorney, Mr. Tyler, and was immediately mailed to Judge Mayes at Jackson. It reached Jackson the last day of December, and was in due course deposited in one of the Jackson banks for collection on January 2d, January 1st being a legal holiday. When the exchange reached New York it was not paid, for the reason that the Commercial Bank & Trust Company of Brookhaven had failed. Judge Mayes immediately notified Mr. Coleman that the exchange had not been paid, and requested him to pay the said one thousand dollars, as the balance due for the purchase price of the land. Mr. Coleman declined to do so, claiming that he had paid the same through Mr. Baggett, as above set out.

The only two questions for decision here are: First, where the payments to be made under the said contract, whether in Jackson or Brookhaven? and, second, if the payments were to be made in Jackson, under the contract, then was this provision of the contract waived by the appellant, or her agent, Judge Mayes?

The contract states that both payments were to be made in cash, at Jackson, Miss. free of any exchange. We think a mere quotation of this part of the contract shows beyond all question that it contemplates that the money was actually to be paid to the appellant or her agent in Jackson. The fact that New York exchange was sent to the appellant in payment of the two hundred dollars, and was duly collected by the appellant, does not show in any way any waiver on the part of the appellant of the place at which these payments were to be made. The contract simply means that there is no payment until the money is actually in the hands of the appellant in Jackson; and the depositing of the New York exchange in each instance was in no wise an acceptance of the same as payment. It is contended by the counsel for the appellee that the phrase, "free of exchange" simply means that the face value of the exchange in Jackson should be the amount of the indebtedness. To this proposition we do not agree. The meaning of the contract is simply that the money must be actually paid in Jackson, and that the mere depositing of New York exchange, or of a check, is not an acceptance in lieu of the actual money, and does not become a payment until the money has actually been paid as called for by the said check or exchange.

Counsel then contend that this part of the contract was waived by the appellant's authorizing her attorney, Mr. Tyler, to turn over the deed and get the money. A complete answer to this contention, however, is that Mr. Tyled did not get the money, but got a New York exchange; another answer is that Tyler did not have authority to accept New York exchange in place of the money. The authority under which Tyler acted was known to Mr. Baggett, who was the agent of the appellee Coleman in the payment of this money. When Mr. Tyler was sent the deed by Judge Mayes, he was fully instructed about the contract and that payment should be made in Jackson; and a copy of the contract was sent him, which copy was shown by him to Mr. Baggett, the assistant cashier of the

bank, who was representing the appellee Coleman in this transaction. The record in this case fails to disclose any testimony whatever upon which the contention of a waiver of this clause of the contract can be based. In the case of the *Bank of Greenville* v. *Kretschmar et al.,* 91 Miss. 608, 44 So. 930, the question of what effect the delivery of a check to a creditor has as to payment of a debt was discussed by the court as follows:

"In 22 Am & Eng. Ency. of Law (2d Ed.) page 569, it is said: 'It is a well-settled and universally recognized rule that, when a debtor has given his check for the amount of his indebtedness, the *prima facie* presumption arises that the check was taken merely as conditional, not absolute, payment, and in case the check is not honored upon due presentation, the original indebtedness for which it was given continues to exist, and recovery may be had by the creditor without resorting to the debtor's liability on the check.' "

In the same opinion it is further stated:

"A check is not payment, unless the check is paid, unless it is specially agreed by the parties that the check, whether good or not, shall have that effect; and the burden of proof always rests on the party asserting it to show that the check was to have that effect. The presumption is against its being so received, and this presumption can only be overcome by clear proof to the contrary."

New York exchange has no more sanctity than a check. We therefore hold that there was no payment of the one thousand dollars to the appellant. At the time the appellee Calcote took his deed of trust on this land, he was aware of the claim of the appellant. Consequently his claim is subject to the superior claim of the appellant.

*Reversed and remanded.*