SAYERS & SCOVILL CO. *v.* DOAK.
*In re* MEADERS' ESTATE.

[89 South. 917.   No. 22043.]

1. PRINCIPAL AND AGENT.   *Undertaker not "merchant or trader" within business sign statute.*

The business sign statute (Code 1906, section 4784; Hemingway's Code, section 3128), which provides, among other things, that if a person shall transact business as a trader or otherwise, and fail to disclose his principal or the true owner by a sign in letters easy to be read, placed conspicuously at the house where the business is carried on, all property, money, and choses in action used or acquired in such business shall, as to the creditors of such person, be treated as his property, applies alone to merchants or traders and persons *ejusdem generis;* it has no application to the business of an undertaker, even though carried on by such person in connection with his furniture and coffin business, and in the same building; for an undertaker is not a merchant or trader, his business is entirely separate and distinct therefrom.

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS.   *Mortgagee held entitled to enforce mortgage against property assigned, although description void.*

Where a merchant, before making a general assignment for the benefit of his creditors without preferences, bought an automobile hearse (which was covered by the deed of assignment), and to secure the purchase money therefor gave a mortgage on such hearse, the mortgagor is entitled to enforce such mortgage against the hearse in the hands of the assignee under the assignment for the unpaid purchase money, even though the description of the property conveyed in such mortgage be void, and the mortgage not recordable, because not properly acknowledged, for such a mortgage is an equitable lien, and will be enforced, not only against the grantor in such mortgage, but as against all others except innocent purchasers for value without notice.

3. ASSIGNMENT FOR BENEFIT OF CREDITORS.   *Mortgage held enforceable against property in hands of assignee, who is mere volunteer.*

Such a mortgage may be enforced against the property therein conveyed in the hands of the assignee of the grantor in the mortgage holding under a general assignment for the benefit of creditors, for such assignee is a mere volunteer, and not a purchaser without notice for value.

APPEAL from chancery court of Grenada county.

HON. J. G. McGOWAN, Chancellor.         •

In the matter of the assignment of J. P. Meaders. Say-
ers & Scovill Company filed a cross-petition against L. T.
Doak, assignee-receiver of the estate. Decree for the re-
ceiver, and the Sayers & Scovill Company appeals.    Re-
versed and remanded.

This is a contest between appellant, Sayers & Scovill
Company, and appellee, Doak, as assignee-receiver of the
assets of J. P. Meaders, an insolvent debtor.   Meaders,
being insolvent, made a general assignment for the benefit
of his creditors, which trust the assignee was proceeding to
administer as assignee-receiver under chapter 8, sections
120 to 128, inclusive, Code of 1906 (chapter 4, sections 107
to 115 inclusive, Hemingway's Code), when the appellant
filed a cross-petition in the matter of the said receivership,
setting up that it had a valid mortgage for the balance of
the purchase money due it, on a certain automobile funeral
car covered by said deed of assignment, and part of the as-
sets being administered by said receiver, and asking that
its indebtedness and mortgage be established against said
car.   Copy of the mortgage was exhibited with appellant's
cross-petition as a part thereof.   The receiver filed an
answer to appellant's cross-petition in which it was claimed
that appellant's mortgage was void for want of proper de-
scription of the funeral car; that said mortgage was im-
properly acknowledged, and the acknowledgment improp-
erly attested, and therefore it was not entitled to be re-
corded; and that since it was not recordable appellant was
not entitled to the relief prayed for in its cross-petition.
The cause was set down for hearing in the court below on
the pleadings, exhibits, and record testimony alone.   There
was a decree denying appellant any rights under its mort-
gage, from which this appeal is prosecuted.

The facts necessary for a proper consideration of the
questions involved are as follows: Meaders, the insolvent
debtor, bought the funeral car in question from appellant
some time during the year 1920 (the assignment was made

on the 12th of March, 1921), and to secure the purchase
money for the same executed and delivered to appellant a
mortgage on said car, which was acknowledged and filed
for record and recorded in the office of the chancery clerk
of Grenada county, in which county Meaders carried on
his business and had said car located. At the time of the
assignment by the insolvent debtor, Meaders, he had paid
only one of the purchase-money notes for said car. The
cross-petition of appellant avers that Meaders at the time
the car in question was bought by him and also at the time
of the assignment was engaged in the furniture and *under-
taking business* (italics ours), under the name and style
of J. P. Meaders Furniture Company. The answer of the
receiver to appellant's cross-petition states that Meaders
the debtor was doing business under the name and style of
J. P. Meaders Furniture Company and was engaged in
selling furniture and buying and selling coffins *and bury-
ing people* (italics ours) and had a regular place of busi-
ness in the city of Grenada, and that said hearse was ac-
quired and used in said business.

*Cowles Horton,* for appellant.

Appellee claims that this mortgage is void for want of
a proper description. Because it is void, as he contends,
appellant is entitled to no relief. I purpose to show that
neither of these contentions can be sound; that the descrip-
tion is valid, but if not, appellant still has a lien on this
property which a court of equity must enforce. Appellee
does not, and of course, cannot claim any rights as an in-
nocent purchaser for value. *Paine* v. *Hotel Co.,* 60 Miss.
360; *Paine* v. *Sykes,* 72 Miss. 351; *Bank* v. *Kretschmar,* 91
Miss. 617.

If that description of a rare and isolated funeral car is
not good, I am unable to understand how this court could
have upheld less certain descriptions as applied to live
stock in *Nicholson* v. *Karpe,* 58 Miss. 34, and *Williams* v.
*Crook,* 63 Miss. 9.

Neither do I think there is anything in the contention that the mortgage is not good because it fails to show the county and state of the location of the property. *Wetlin* v. *Mount,* 73 Miss. 526; *Peacher* v. *Strauss,* 47 Miss. 355; *Wilkinson* v. *Webb,* 75 Miss. 403; *Ladnier* v. *Ladnier,* 75 Miss. 777; *Gex* v. *Dill,* 86 Miss. 10.

The objection most strongly urged against this instrument is that it is not recordable on account of defective acknowledgment. Appellee claims that, since it is not a recordable instrument, appellant is entitled to no relief, because under the business sign, statute of this state, the property must be taken as the property of the assignor and liable to creditors, excluding, if the court please, this particular creditor and its security. My contention and my claim is: First, that the instrument was correctly recorded by the clerk, and next, even if not, this appellant as a secured creditor of this assignor, is still entitled to the relief prayed for.

It is conceded throughout this litigation that appellant and Meaders intended that the former should have a valid lien upon this car for the purchase price thereof, that they both acted in the utmost good faith, and endeavored to produce an instrument that would unquestionably bind this property for the payment of the purchase price; that appellee's position will operate to defeat the honest purpose and intent of these parties, and if this instrument is thus invalidated, it must arise, not from any species of equity, but from the strictest and stearnest of legal technicalities affecting not the substance but the mere form of the transaction. We naturally, therefore, ask ourselves the question: What, in this sort of a situation, should be our aim? Should we strive to uphold, or should we endeavor to defeat the purpose of the parties?

It should be the aim of courts in cases like this to preserve and not to destroy. Sir Matthew Hale said they should be astute to make acts effectual, according to the honest intent of the parties. *U. S.* v. *Clarke,* 95 U. S. 710. The above language was applied to a defective acknowledg-

ment, and stands in exact accord with the policy of this court, so often enunciated. Appellee's efforts are to tear down and destroy, and he seeks to do this by the hardest and strictest of all legal technicalities: that sort, for instance which sacrifices substance to form, which ignores the things and runs off after the shadow.

In *Barnard* v. *Elder,* 50 Miss. 342, this court says: "that acknowledgments are to be examined in a spirit of liberality and indulgence and should be sustained when it can be done by fair legal intendment." At this point, I respectfully submit to the court that when an objection is made to an acknowledgment 'and it requires a great display of learning and laborious argument to override and destroy the acknowledgment, the only safe plan, the only plan in keeping with our own adjudications, is to uphold the acknowledgment; because the concern which confronts us is not a matter of legal refinement and nicety at all, but what is the legal intendment of the parties from the words they have used. *Russ* v. *Wingate,* 30 Miss. 447; *Pickett* v. *Doe,* 5 Sm. & Mar. 487; *Wilkins* v. *Webb,* 9 Sm. & Mar. 535; *Kenneday* v. *Price,* 57 Miss. 771; *Love* v. *Taylor,* 26 Miss. 574; *Levy* v. *Williams,* 38 Miss. 34; *Halls* v. *Thompson,* 1 Sm. & Mar. 488.

It was contended in the lower court that *Halls* v. *Thompson* had been overruled by *Elmslie* v. *Thurman,* 87 Miss. 540, but this contention is without merit. It was not expressly overruled certainly, and the very fact that Judge CALHOUN, in his opinion, made the statement that "we . . . do not stop to draw the distinction between it and *Halls* v. *Thompson,* show very plainly, not only that the court did not intend to overrule the latter, but that its purpose was just the reverse. The distinction which the court there held in mind is obvious. In the one case the grantor had done nothing more than to acknowledge a signing of the instrument, which was not good; in the other the acknowledgment showed that the instrument was the grantor's deed, meaning, of course, not only a signing but also a delivery.

If the cases just cited shall be followed, here, I am unable to follow counsel's contention that this acknowledgment is not good. The mortgagor appeared before this notary, subscribed the instrument in his presence, and acknowledged that it, "is given to secure" the debt. Had he merely acknowledged that he had signed the paper, this, under our authorities, would not have been good. But he did more than this. His statement was that the paper "is given," that is to say, not only signed but delivered, for he could not "give" a mortgage without delivery as well as signing. *Ketchums* v. *Everston,* 7 Am. Dec. 384.

The proper end of all rules of construction, says this court in *Hart* v. *Gardner,* page 159, of 74th Miss., "is to effectuate the intention of the parties to the instrument and the intention of the grantor in a deed is to govern, when it can be ascertained equally as in the case of other instruments. In arriving at it the entire instrument is to be considered . . . and the intent, and not the words, is the principal thing to be regarded. The technical rules of construction are not to be resorted to when the meaning of the parties is plain and obvious."

If such be true of the ordinary instrument, it is even more so when applied to acknowledgments, as to which the greatest degree of indulgence and liberality must be shown. In view of the ruling made on the matter in the case of *Ingraham* v. *Grigg,* 13 Sm. & Mar. 30, I do not anticipate that learned counsel will press in this court the contention that the acknowledgment is not good because in the form of an affidavit. Concluding this branch of the argument, it is submitted that the mortgage is good and was properly recorded.

I think there can be no question about the proposition that Meaders, himself, could not raise any of these objections here urged by the appellee, and that, as between themselves, appellant on the facts of this case would be bound to prevail. This, as I understand, is conceded.

I think it is also clearly established that the assignee receiver takes the property subject to the same claims and liens that exist against it as between the original parties. This is squarely held in *Paine* v. *Hotel Co.,* 60 Miss. 360; *Paine* v. *Sykes,* 72 Miss. 351; *Bank* v. *Kretschmar,* 91 Miss. 617, cited *supra,* and accords with other decisions of this court and elsewhere. *Walton* v. *Hargraves,* 42 Miss. 19; *Kelly* v. *Miller,* 41 Miss. 267; Burrill on Assignments, sec. 391, 4 Cyc, 219; *In re Howe,* 19 Am. Dec. 397; *Lavin* v. *Lynch,* 168 N. W. 1024.

Unless, therefore, the appellant shall be defeated solely by the application of the business sign statute of this state, it is bound to be entitled to the relief prayed for, and it is on this ground that the appellee lays his claims.    This brings us to a discussion of The Business Sign Statute.

Appellee's answer in this case sets up the affirmative defense that "the said J. P. Meaders Furniture Company was engaged in the business of selling furniture and also in buying and selling coffins and burying people and had a regular place of business in the city of Grenada, Grenada county, Mississippi, and the said automobile hearse was acquired and used in said business.    Taking this answer most favorably to the appellant (2 Miss. Dig., sec. 153), we find that it shows that this assignor was engaged in two separate and distinct classes of business.    He was a furniture merchant, and he was also an undertaker.    He acquired and used this hearse in said, that is, the latter business, and would never have acquired it unless he had been also an undertaker.

The question, then arises: Whether the statute embraces the business of the undertaker at all.    We say it does not, and if this be true, appellee's claims are bound to fall without regard to any other proposition in the case.    The statute never applied to any business whatsoever, except to traders and persons *ejusdem generis.    Yale* v. *Taylor,* 63 Miss, 598; *Lyons* v. *Steele,* 86 Miss. 261; *Wills* v. *Grocery Co.,* 19 So. 101; *Oliver* v. *Ferguson,* 112 Miss. 521.

This does not embrace an undertaker, who is defined by 39 Cyc, 673, to be a person who engages in the care of dead human bodies, and the burial or other disposition of them, together with the conduct of the funeral and burial services; "one who takes the charge and management of funerals." The difference between the business of the merchant and of the undertaker is clearly recognized by this court in *Smith* v. *Perkins,* 112 Miss. 870, and if Meaders had not also been engaged in the furniture business, I do not suppose that counsel would ever have argued that the statute is applicable. But this fact cannot change the situation, nor make the statute applicable to the undertaker business; if it be not applicable had Meaders not also been engaged in another business to which the statute does apply. In other words, in determining the applicability *vel non* of this statute to the undertaker business, we must ignore entirely the fact that he was also a dealer in furniture in which business he did not acquire or use this property at all. There can be no doubt about this proposition in view of the following statement made by C. J. SMITH, in *Orr* v. *Jitney, Co.,* 115 Miss. 140, viz: "The Jackson Jitney Car Company was engaged in two separate and distinct lines of business: First, operating automobiles and taxicabs for the carriage of passengers for hire in the city of Jackson and vicinity; and, second, trading in automobile supplies. The Jitney bus here in controversy was acquired and used in its business of operating automobiles for hire, and consequently does not come within the provisions of section 4784 of the Code, so that the lien of Decell, the judgment creditor, should have been postponed to that of appellant.

In view of the fact that it has been so clearly settled in this state that the statute does not apply except to a certain class, within which the undertaker does not fall (See, also, 2 Am. Law Rep., page 838) and in view also of the above statement made by Judge SMITH, I cannot understand at all why the statute could be invoked in a case of this sort,

where the property was never acquired nor used in a business of a trader or person *ejusdem generis.*

If the court shall hold, however, that the business of the undertaker is included in the statute, this holding cannot defeat appellant's right, because the statute cannot apply on the facts of this case. It was never intended for a case of this character and has never been so applied. If it shall be applied here, it will not only be the first application under facts such as these, but the effect will be to overrule and set aside certain announcements of this court which are completely antagonistic to the position taken by the appellee on this question.

The court will keep in mind the fact that this appellant claims here as a creditor, pure and simple; that it does not and has not disputed the assignor's ownership, nor laid any claim against this property, saving its claim as a creditor with certain priorities which the law clearly recognizes. The court will also keep in mind that the assignee seeks in this case to ignore and exclude the rights of this creditor, however *bona fide* its claims and liens may be.

We have already shown that this appellant has a certain claim against this property which a court of equity will enforce against the assignor and this assignee. We have also shown that appellant lays no claim here as the owner of the property or antagonistic to the terms of the statute. How then, and in what way can the statute step in and defeat the claims of this party, who is just as much a creditor of this assignor as anyone else? It cannot be done, as we have stated, without overruling and setting aside certain announcements which this court has already made in connection with this very statute. *Dobbs* v. *Pratt,* 64 Miss. 123; *Frank* v. *Robinson,* 65 Miss. 162; *Kinney* v. *Paine,* 68 Miss. 262; *Hardware Co.* v. *Harvester Co.,* 110 Miss. 784.

There are many cases decided by this court in which this statute has been involved, but thus far this court has not made one single announcement at variance with the principles established by the cases we have cited. Thus far

this court has never applied the statute to a claim of the character here involved, nor in a contest among the creditors of the common debtor. Whether it shall now be done we cannot foretell, but we respectfully submit that such an announcement would be not only a new application of the statute, but the effect would be, necessarily, a departure from the principles so well established already to the contrary.

*McLean, Carothers & McLean,* for appellee.

The well-settled rule is that the mortgage must mention some fact or circumstance connected with the property which will serve to distinguish it from all other property of the same kind, and must further show that the property mortgaged is the property of the grantor. *Kelly* v. *Reid,* 57 Miss. 89, and must further give the location of the property so that the entire description will enable third persons aided by inquiries which the instrument indicates and directs, to identify the property. This is but elementary law and needs no citations to uphold its correctness.

Let us turn to some of the descriptions which the courts have held to be void for uncertainty: *Houston* v. *Totten,* 1 Miss. Dec. 244; *Westinghouse* v. *McGrath,* 117 A. S. R. 421; *Hayes* v. *Wilcox,* 61 Iowa 732. Numerous authorities could be cited but we take the above as representative of the rule.

B. In the second place the mortgage does not show the location of the property, which according to well-settled principles renders it void. 11 C. J., page 465, (89); see, also, *Westinghouse* v. *McGrath, supra; Nicholson* v. *Karpe,* 48 Miss. 36; *State Bank* v. *Felt,* 61 A. S. R. 253; *Joslyn* v. *Moose River Lumber Co.,* 138 A. S. R. 1069; *Andregg* v. *Brunskill,* 43 A. S. R. 388.

II.

The mortgage was not properly acknowledged and was therefore not entitled to be recorded and the fact that it

was recorded did not bind the appellee. The acknowledgment recites that "said claim is just and unpaid, and that the foregoing mortgage is given to secure the same." The statute prescribed forms of acknowledgment. Section 2799, Code of 1906 (sec. 2300, Hemingway's Code); *Smith* v. *Williams,* 38 Miss. 48; *Perkins* v. *Swank,* 43 Miss. 349.

The court must now come to consider whether they will go still further and say that the words "as given," is equivalent to "signed and delivered," or "executed." *Quaere*: What is meant by the expression "is given?" The authorities are in accord that in order for the acknowledgment to be good, it must affirmatively appear that the grantor acknowledged the execution of the instrument; the word "acknowledged," need not necessarily be used, but some word must be used which substantially means acknowledged. In *Trerise* v. *Dottego,* 108 A. S. R. 563, (note); *Dewey* v. *Campau,* 4 Mich. 565; *Elsie* v. *Thurman,* 87 Miss. 540; 1 C. J., page 856, note 33 section b.

## III.

The jurant of the notary before whom the attempted acknowledgment was taken, does not comply with the statute and therefore the acknowledgment is void, and the mortgage not entitled to recordation and the fact that it was recorded did not bind the appellee.

The jurant is as follows: "Sworn to and subscribed before me, a notary public in and for said county, this 2nd day of October, 1920.

"W. K. HUFFINGTON, Notary Public. (Seal)."

The acknowledgment is as follows: "The undersigned makes oath that the foregoing mortgage is given to secure the same."

Section 3452 of the Code of 1906 (section 2785, Hemingway's Code) provides that the notary public shall take acknowledgments to deeds, etc., and to certify the truth thereof, under his seal of office. Section 3448 of the Code of 1906 (section 2781, Hemingway's Code), says that the no-

tary public shall provide himself with a suitable seal and his official acts shall be attested by his seal of office.

Section 2798 of the Code of 1906 (section 2299, Hemingway's Code), provides that every instrument may be acknowledged before certain persons, who shall certify such acknowledgment or proof under the seal of his office.

Now it is manifest that in order for any act of a notary public to be good or admissible in evidence, that act must be certified under the seal of his office. It is not sufficient that there be in fact a seal attached to the act, or that he sign himself notary public, but that he must certify to the fact under his seal of office.

The seal is absolutely essential to a proper certificate: *Trerise* v. *Bottego,* 108 A. S. R. 553, (note), and especially: *Mason* v. *Brock,* 52 American Decisions, 492. In the case at bar the record does not show that any seal at all was affixed, and while the recording of the seal is not necessary, yet the certificate that the official seal is attached is essential.

Our statute says that the notary must certify under the seal of his office. Now how can one ascertain that the seal attached is the official seal unless the officer himself so certifies? Cases directly in point: *Dawsey* v. *Kirvir* (Ala.), 7 American Law Reports, page 1658, and notes, Ib., page 1669; 83 So. 338; *Breitling* v. *Marx* (Ala.), 26 So. 203; *Austin* v. *Whitlock* (Va.), 4 Am. Dec. 550; *Wetmore* v. *Laird,* 5 Miss. 160, Federal Cases, No. 17, 467.

The proposition is advanced by the appellant that the property involved in this controversy does not come under the sign statute, because an undertaker is not a trader. In the first place we say that the statute says: "If any person shall transact business as a trader or otherwise." This court has repeatedly held that the fixtures in a mercantile establishment are liable under this statute: *Myles* v. *Quin,* 59 Miss. 375.

The allegations of the answer which must be taken as true under section 603 of the Code of 1906 (section 363, Hemingway's Code), are that Meaders Furniture Com-

pany was engaged in the general furniture business and
also in buying and selling coffins and that the property was
used and acquired in the business, etc.  It may be and
doubtless is true that the hearse was not in the business
for sale, but he was selling coffins, and we know that in
delivering coffins it is necessary to use the hearse when
dead people are buried.  This hearse was used whenever
the assignor sold a coffin and as part of the sale was to bury
a party.  We might as well say that a truck used by a
merchant to deliver goods sold does not come under the
statute.  It could not with any degree of success be main-
tained because such truck would be used in the business.
In *Quin* v. *Myles, supra,* the billiard tables used in a bil-
liard and saloon business was embraced under the statute,
and yet those tables were not dealt in as merchandise; so
it may be said about the furniture and fixtures in a mercan-
tile business, and we do not suppose anyone would contend
that counters, scales, etc., used in mercantile business are
not covered by the statute.  It was held that an insurance
policy is covered by the statute in *Meridian Land Company*
v. *Armond,* 82 Miss. 758, extra.  The idea covered by the
statute was to embrace any property used by a person in
business upon the faith of which credit might be extended.
It was not intended to cover alone property that was
placed in the hands of the party for purposes of sale, as
to such property no statute was needed, for this is covered
by the common law, see: *Columbus Buggy Company* v.
*Turley & Parker,* 73 Miss. 529; *Parry Mfg. Co.* v. *Lowen-
burg et al.,* 88 Miss. 532.

In *Payne* v. *Hall Safe & Lock Company,* 64 Miss. 175, the
property was a safe and the seller had reserved title in the
safe until paid for.  The purchaser was not engaged in the
business of selling safes or anything of that kind, but was
a jeweler.  The court held that the safe was liable under
the statute to the creditors.  What is the difference in
principle between the instant case and that?  In the one
case the safe was used for the purpose of keeping the jew-
elry.  In the case at bar the hearse was used to deliver cof-

fins. The statute is that all the property, stock, goods, etc., used or acquired in the business shall be liable. And in the recent case of *Fitzgerald* v. *American Mfg. Co.,* 114 Miss. 580, a ceiling fan in a billiard room was held to be covered by the statute.

Let it be granted for the sake of the argument that a person who is nothing but an undertaker, that is, one who is engaged alone in the business of burying the dead and that in that business he uses a hearse and that the hearse would not come under the statute, it does not follow that the property involved is exempt from the operation of the statute simply because the hearse is used in connection with the sale and delivery of coffins. The hearse is used as a means toward selling coffins. An undertaker not only buries people, but he also generally sells the coffins and the hearse is used to complete the sale of the coffins, and hence it is acquired and used in the business of selling coffins. We might as well say that a merchant who sells his goods by the pound, like sugar or salt, does not use in his business the scales that he used to weigh the sugar or other article of sale.

All that appellant had upon the property was a lien, whether he claims under the mortgage or under a lien for the purchase money; a seller of personal property has a lien upon the property sold irrespective of our purchase money statute, and he has a right to enforce that lien in equity against all persons except *bona fide* purchasers for value without notice. And yet in the face of this well-settled principle of law, this court has held in two cases, that the lien of the seller cannot be enforced against an assignee for the benefit of creditors.

In *Frank, et al.* v. *Robinson et al.,* 65 Miss. 171, this court in considering this question, which was a suit in equity brought by the seller against an assignee in a general assignment for the benefit of creditors, squarely held that the claim of the assignee should prevail over the claim of the vendor, the court using this language: "It is not true that one who might have taken the goods in the hands of

the assignor may also take them in the hands of the assignee. To do this the plaintiff must show some equitable or legal claim or lien which overrides and is superior to the title of the assignee. This was affirmed in *Goodbar & Co.* v. *Knight,* 89 Miss. 124.

Appellant argues that it occupies a better position than others who have passed under review by this court in the construction of the Business Sign Statute, and that it must prevail whether or not its mortgage is valid or invalid, and whether or not properly entitled to recordation. This contention is not borne out by the authorities. In order for appellant to prevail, it must show, first, a valid mortgage, and, second, this mortgage must be properly recorded; otherwise, this property passes to the assignee-receiver for the benefit of creditors. *Frank, Herman & Co.* v. *Robinson et al.,* 65 Miss. 169; *Payne Hardware Co.* v. *International Harvester Co.,* 110 Miss. 786; *Gillaspy* v. *International Harvester Co.,* 109 Miss. 139. See, also, the recent case of *Hunter* v. *Forrest,* 115 Miss. 7; *Chisholm* v. *Chisholm,* 75 So. 125; *Miller* v. *Fidelity Union Fire Ins. Co.,* 88 So. 711; *Frank et al.* v. *Robinson et al.,* 65 Miss. 171; *Payne Hdw. Co.* v. *International Harvester Co.,* 110 Miss. 783. Even as to the purchase money: *Goodbar* v. *Knight,* 89 Miss. 124; *Frank et al.* v. *Robinson, supra.*

In other words unless the claim of the appellant is sustained upon the ground that it has a valid mortgage, then the decree of the lower court must be affirmed.

ANDERSON, J., delivered the opinion of the court.

(After stating the facts as above). Two questions arise, the solution of which goes to the root of and settles the whole controversy in this case, making it unnecessary to consider the other questions argued by counsel; and they are: First, whether by virtue of our sign statute (Code of 1906, section 4784; Hemingway's Code, section 3128—part of the statute of frauds) under the facts of this case, the funeral car involved was freed from appellant's mortgage,

and subjected to the claims of general creditors; and, if not, second, whether appellant's mortgage, although the funeral car was therein improperly described, and said mortgage was not recordable, is enforceable as a lien against said car in the hands of said receiver.

The court has held in several cases that this sign statute had no application whatever to any kind of business, except that of merchants and traders and persons *ejusdem generis.* *Yale* v. *Taylor,* 63 Miss. 598; *Lyons* v. *Steele,* 86 Miss. 261, 38 So. 371; *Oliver* v. *Ferguson,* 112 Miss. 521, 73 So. 569.

It was held in *Smith* v. *Perkins,* 112 Miss. 870, 73 So. 797, under chapter 90, Laws of 1916, requiring each dealer in coffins, if an undertaker, to pay a privilege license of one hundred dollars, but providing that a merchant carrying coffins in stock and paying a privilege tax on the stock shall pay a tax of five dollars in addition to the tax required of him as a merchant; that where the merchant carries a stock of coffins in addition to his other stock and takes charge of dead bodies and prepares them for burial, he cannot escape the one hundred dollars privilege tax required of an undertaker. The court said that the business of an undertaker was a distinct profession; that the undertaker took charge of the corpse and prepared it for burial and attended to its interment, which was an entirely separate and different business from that of a merchant dealing in coffins. And in *Orr* v. *City of Jackson,* 115 Miss. 140, 75 So. 945, it was held that, where a jitney car company was engaged in operating automobiles and taxicabs for hire and also engaged in trading in automobile supplies and accessories, and acquired a jitney bus and used it in its business of operating automobiles for hire, such bus did not come within the provisions of section 4784, Code of 1906 (section 3128, Hemingway's Code), the business sign statute, making property used in the business of a merchant or trader liable to creditors if a business sign is not displayed as required by said statute; and that the lien of the judgment creditor in that case was postponed

to the lien of the seller of the bus, who sold it with a reservation of title. The court said further that the jitney company was engaged in two separate and distinct lines of business, one of which was operating automobiles and taxicabs for the carriage of passengers for hire in Jackson and its vicinity, and the other in trading in automobile supplies. That the business of operating a bus or taxicab for hire did not come within the provisions of the said sign statute, because it was not the business of a merchant or trader.

We are of the opinion that the last case above is decisive of the question here involved. The business of an undertaker is not the business of a merchant or trader. It would come nearer being a profession than a trade. An undertaker sells nothing except his skill in preparing dead bodies for burial and attending their interment.

It may be conceded for the purpose of this decision that the mortgage in question is void because the hearse was not properly described therein, and, furthermore, that it was not entitled to be recorded because not properly acknowledged, and for the further reason that the acknowledgment was not properly attested by the notary public taking it, and still it was an equitable lien on the hearse because the law is that where an abortive attempt has been made to give a mortgage, still it will be given the effect and operation of a mortgage in equity, and, like other equities, is maintainable, not only against the grantor in such mortgage, but as against all others, except innocent purchasers for value without notice. The applicable principle is that equity considers that done which ought to be done. 19 R. C. L., pp. 273, 274, 275, sections 44, 45. Among other things, it is stated in this authority in section 45 that this principle applies to writings which are incapable under the law of having the effect of a mortgage because of the absence of a seal; in cases of defective registration; insufficient attestation, and irregular acknowledgment—even when those formalities are made essential by statute as a part of the due execution of the instrument.

The receiver here stands in the same attitude as the debtor, Meaders, with reference to this mortgage. Meaders could not contest it on any of the grounds mentioned. The receiver is a mere volunteer, with no greater rights than the debtor. He cannot claim any rights as an innocent purchaser for value without notice. The appellant has the same right exactly to enforce its mortgage against the car in question in the hands of the receiver that it had while in the hands of Meaders, the insolvent debtor. *Paine* v. *Hotel Co.,* 60 Miss. 360; *Paine* v. *Sykes,* 72 Miss. 351, 16 So. 903; *Bank* v. *Kretschmar,* 91 Miss. 608, 617, 44 So. 930. The receiver took the funeral car with this mortgage on it whether he knew it or not and whether he had constructive notice by record or not. The case of *Frank* v. *Robinson,* 65 Miss. 162, 3 So. 253, has no application to the facts of this case. It was sought in that case by one of the creditors to establish a purchase-money lien on the goods in the hands of the receiver. At that time under section 1255, Code of 1880, as amended by act of March 11, 1884 (Laws 1884, chapter 77) the seller of personal property was only given a right to establish a lien for the purchase money on the goods sold; he had no lien from the time of sale. It took a proceeding in court to establish a lien. Now under this statute as amended (section 3079, Code of 1906; Hemingway's Code, section 2436) the seller is given a lien on the goods from the time of the sale. The court held, in view of the fact that the rights of creditors had intervened by virtue of the assignment, the creditor had lost his right to establish a lien for the purchase money. In the present case, although the mortgage may be defective and unrecordable, still, as we have seen, it was a lien while the hearse was in the hands of a purchaser, Meaders, and continued to be in the hands of the receiver a mere volunteer. The lien existed when the received took the hearse under the assignment.

*Reversed and remanded.*